Girardeau A. SPANN, et al., Plaintiffs,

v.

COLONIAL VILLAGE, INC.,
Defendant.

Girardeau A. SPANN, et al., Plaintiffs,

v.

Marvin J. GERSTIN, et al., Defendants.

Girardeau A. SPANN, et al., Plaintiffs,

v.

Howard BOMSTEIN, et al., Defendants.

Civ. A. Nos. 86–2917, 86–3196
and 86–3268.

United States District Court,
District of Columbia.

May 22, 1987.

Kerry Alan Scanlon, Washington Lawyers Committee for Civil Rights Under Law, William H. Jeffress, David G. Webbert, Julia E. Guttman, Miller, Cassidy, Larroca & Lewin, Washington, D.C., for plaintiffs.

Reuben B. Robertson, Herman A. Manuel, Ingersoll & Bloch, Washington, D.C., for defendant Colonial Village, Inc.

Dennis H. Bloomquist, General Counsel, Mobil Land Development Corp., New York City, for defendant Mobil Land Development Corp.

Peter L. Sissman, Arlington, Va., Thomas H. Farquhar, Washington, D.C., for defendants Marvin J. Gerstin and Marvin J. Gerstin Associates.

## OPINION

HAROLD H. GREENE, District Judge.

In these consolidated cases,[1] plaintiffs Girardeau A. Spann, the Fair Housing Council of Greater Washington ("FHC"), and the Metropolitan Washington Planning and Housing Association ("MWPHA") have brought suit, seeking a declaratory judgment, permanent injunctive relief and damages, against Colonial Village, Inc. ("Colonial"), Marvin Gerstin Associates, Inc., an advertising agency and Marvin Gerstin (collectively referred to as "Gerstin"), alleging that the advertisement campaigns of these defendants in *The Washington Post* featuring exclusively white models indicate a racial preference in violation of the Fair Housing Act, 42 U.S.C. § 3604(a) and (c) and sections 1981 and 1982 of the 1866 Civil Rights Act, 42 U.S.C. §§ 1981, 1982.

Colonial and Gerstin have moved to dismiss or, in the alternative for summary judgment, on the grounds, *inter alia*,[2] that plaintiffs have failed to state a claim under either section 1981 or 1982, and that plaintiffs' claim under the Fair Housing Act ("FHA") is barred by the limitations period set forth in that statute. *See* 42 U.S.C. § 3612(a). Gerstin's motion to dismiss is based on the additional ground that plaintiffs have failed to state a claim upon which relief may be granted under the FHA.[3]

1. Originally, three cases were involved in this consolidated action. By a stipulation of dismissal filed on March 30, 1987, plaintiffs' suit against Howard Bomstein and related defendants, *Spann v. Bomstein*, C.A. No. 86–3268, was dismissed with prejudice.

2. Both defendants assert additional grounds in their respective motions. Colonial contends that the plaintiff associations, the FHC and the MWPHA, do not have valid claims for monetary damages. On the basis of a somewhat similar argument, Gerstin's motion argues that plaintiffs' claims are barred by the First Amendment to the Constitution. According to the longstanding principle that courts should decline to resolve constitutional issues if such resolution can be avoided by adjudication of a statutory issue

or issues, *see Schmidt v. Oakland Unified School Dist.*, 457 U.S. 594, 102 S.Ct. 2612, 73 L.Ed.2d 245 (1982); *Siler v. Louisville & Nashville Railroad Co.*, 213 U.S. 175, 193, 29 S.Ct. 451, 455, 53 L.Ed. 753 (1909), the Court finds it unnecessary to address Gerstin's First Amendment argument as this case can be disposed of on statutory grounds. The standing arguments mentioned above, as well as a Colonial motion to strike, seal, or expunge the complaint likewise do not need to be discussed since the other grounds in the motions completely dispose of plaintiffs' claims.

3. Plaintiffs also allege that, by using ads exclusively featuring white models over a significant period of time, Gerstin has breached a Conciliation Agreement, which was signed by Gerstin

To facilitate an orderly and logical disposition of the issues raised in the motions of the two defendants, and in light of the substantial similarity of the issues raised in the motions, this Opinion will address those issues in the following manner. After briefly discussing the factual background, the Court will consider the various motions regarding the claim under the FHA, including the statute of limitations arguments. This will be followed by a brief discussion of defendants' motions to dismiss the section 1981 and 1982 claims.

## I

From January 1985 to April 24, 1986, Colonial caused to be published advertisements in *The Washington Post* for the sale of housing units in the Colonial Village complex in Arlington, Virginia. These advertisements featured exclusively white models. Contending that these all-white model advertisements conveyed a racial preference for white purchasers, plaintiffs filed administrative complaints with the District of Columbia Office of Human Rights ("OHR") and the United States Department of Housing and Urban Development ("HUD") on April 24, 1986. To date, one year later, these complaints remain unresolved. However, apparently as a consequence of the pendency of the administrative complaints, Colonial adopted a written policy that, according to it, reflects its commitment to equal housing opportunity, in that it specifically requires nondiscriminatory selection of models for Colonial's ads. Colonial claims that it notified its advertising agency of this policy and instructed it to ensure that an adequate number of black models were featured in Colonial's ads.

During the ten-month period from April 24, 1986 to February 24, 1987, at least thirty-six percent of Colonial's ads published in *The Post* have featured black models. During the 180 days immediately preceding the filing of the complaint herein, 28.6 percent of all of Colonial's ads in *The Post* featured a black model. None of Colonial's ads, at any time, has contained language indicating or suggesting a racial preference. To the contrary; all of its ads in *The Post* have included the phrase "Equal Housing Opportunity" as well as a related logo.

As far as Gerstin is concerned, it placed advertisements depicting only white models from January 1, 1985 to May 30, 1986 for *inter alia,* the Crystal, Espirit, Horizons, and Tivoli Woods properties in Arlington, Virginia. Plaintiffs filed administrative complaints with the OHR and HUD challenging these advertising practices as well. As with the administrative complaints filed against Colonial, the complaints against Gerstin remain unresolved. During the 180–day period immediately preceding the filing of the complaint in this action, thirty percent of the published, display ads made by Gerstin featured black models, and forty percent of the Gerstin display ads published in *The Post* during that period featured one or more black models.

## II

■ Plaintiffs assert that the advertising practices involved here violate section 804(c) of the Fair Housing Act, 42 U.S.C.

---

and the MWPHA among others. Gerstin also moves to dismiss plaintiffs' claim on the ground that it is barred by the statute of limitations. *See* D.C. Code § 12–301(7). Since the Court concludes that defendants' motions to dismiss are meritorious, *see infra,* and therefore will grant these motions, the contractual claim is properly before this Court only if the Court exercises its discretion to retain pendent jurisdiction over that claim. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

The Supreme Court has stated that if federal claims supporting the basis for jurisdiction are dismissed before trial, even though those claims are not insubstantial in a jurisdictional sense, the state claims should be dismissed. *Id.* Some lower federal courts, however, have departed from this dictum and hold that dismissal of the state law claim in such situations is discretionary, based upon considerations of judicial economy, convenience and fairness. *See, e.g., Financial General Bankshares, Inc. v. Metzger,* 680 F.2d 768, 773–74 (D.C. Cir.1982). In this case, consideration of those factors indicates that dismissal of the contractual claim would be proper since extensive pretrial proceedings have not yet occurred. Consequently, the Court will decline to retain jurisdiction over the contractual claim and will dismiss it without prejudice.

§ 3604(c).[4] Section 3604(c) prohibits the "mak[ing], print[ing], or publish[ing] or caus[ing] to be made, printed, or published" any advertisement for the purchase or lease of a dwelling that indicates any discriminatory preference or an intention to make any such preference. Plaintiffs contend that defendants have violated section 3604(c) by making or causing to be made real estate ads featuring only white models over a period of approximately eighteen months. Supporting this claim, plaintiffs cite several court decisions as well as certain regulations promulgated by HUD construing section 3604(c). These contentions are not well taken.

First. Each of the cases in which a court found a violation of section 3604(c) involved far different and far more direct and affirmative indications of racial preference than are present here. For example, in *United States v. Hunter,* 459 F.2d 205 (4th Cir.), *cert. denied,* 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972), the Fourth Circuit not surprisingly held that a rental ad specifying that the apartment was in a "white home" violated section 3604(c). Similarly, an oral statement to a white tenant by her landlord requesting that the tenant send her friends over to see an apartment available for rent in the building, but to "make sure her friends are whites," was held to violate the FHA. *United States v. Gilman,* 341 F.Supp. 891 (S.D.N.Y.1972). And in *Saunders v. General Services Corporation,* 659 F.Supp. 1042 (E.D.Va.1987), Judge Merhige recently found a violation of section 3604(c) where, in addition to the failure to use black models, there was substantial evidence that personnel of the corporation managing the apartment complexes in question repeatedly were instructed to

treat black tenants and prospective tenants less favorably than whites; that the corporation committed a fraud when it agreed to use but did not, in fact, use an equal housing opportunity slogan or logo; and that it virtually failed to use black models in a brochure with sixty-eight photographs of which 134,000 copies were printed. *See also Holmgren v. Little Village Community Reporter,* 342 F.Supp. 512 (N.D.Ill. 1971) (ad indicating a preference for purchaser or tenant who spoke a particular language held to violate section 3604(c)).

All of these precedents are a far cry from advertisements in a daily newspaper during the period covered by the law (*see* Part IV *infra*) (1) some of which depicted only white models, some only black models, and some a mixture of both; (2) in which the number of black models used hovered between approximately thirty and forty percent; and (3) all of which included an equal housing opportunity slogan and logo.

These precedents would help plaintiffs only if they could somehow be construed to require proportional representation of the models of each race in all advertising, but no case has so held.[5]

■ Second. HUD's regulations pursuant to section 3604(c) of the FHA, do provide that "[i]f models are used in display advertising campaigns, the models should be clearly definable as reasonably representing majority and minority groups in the metropolitan area and both sexes." 24 C.F.R. § 109.30(b). However, not only is that provision substantively vague, but it, and other related regulations, state only that certain practices may "indicate" a violation of the FHA or may be "evidence of compliance" with the FHA. 24 C.F.R. §§ 109.25, 109.30.

4. The complaint also alleges that Colonial and Gerstin violated section 3604(a) of the FHA, 42 U.S.C. § 3604(a). However, plaintiffs have not alleged that defendants have refused to sell or rent housing, refused to negotiate for such sale or rental, or have otherwise denied any housing on the basis of race. Gerstin's motion to dismiss for failure to state a claim under section 3604(a), will therefore be granted. Further, since plaintiffs cannot prevail substantively under section 3604(a), Colonial could not have violated that section within the 180–day period

immediately preceding the filing of the complaint, and Colonial's motion to dismiss this claim pursuant to section 3612(a) will also be granted.

5. Indeed, Judge Merhige explicitly held in *Saunders, supra,* that defendants were not required to include blacks in their advertising proportionate to their percentage in the Richmond metropolitan area.

More fundamentally, these regulations were promulgated pursuant to the authority given to HUD to investigate complaints alleging discriminatory housing practices and to refer cases to the Attorney General to initiate suit, 42 U.S.C. §§ 3608, 3610; they give notice to advertisers and advertising media; and they describe when HUD will exercise this authority to investigate or to refer. 24 C.F.R. § 109.10.[6] The regulations not only do not purport to, and they do not, apply to litigation in court, but they fail entirely to provide authority regarding the parameters of section 3604(c) when that provision is involved in the context of such litigation.

### III

Beyond all of these more or less technical difficulties which plaintiffs have failed to overcome, there is the problem of the practical ramifications of their claims were these to be sustained. That problem suggests that, before the Court could ascribe to the Congress an intention to prohibit, *without more*, advertisements or advertising campaigns featuring models predominantly of one race or one sex, that intention would have to be far more clearly expressed.

First. It could be contended in implementation of plaintiffs' theory, that section 3604(c) requires that, if an indication of a discriminatory preference is to be avoided, a black model must be included in each display, real estate advertisement. Such an interpretation of section 3604(c) would be irrational, for nondiscriminatory as well as discriminatory advertisements would then be within the purview of the statute, inasmuch as publication of a single ad with only white models does not *per se* indicate a discriminatory preference.[7]

In addition to being an overbroad application of section 3604(c), such an interpretation could render impractical advertising with human models, for it would mean that every advertisement made or published would have to include at least one model representative of each minority in the relevant community. Consequently, a housing ad with a broad target market might have to include numerous models, and advertisements featuring only one or two models could on that basis alone be regarded as violating section 3604(c). The obvious consequence would be that housing advertisements with human models would become virtually nonexistent.

Second. A narrower interpretation is not more convincing. It may be that plaintiffs are arguing that section 3604(c) requires a proportional representation of blacks in ads, based on the targeted market, for a particular housing project over a period of time.

According to this view of section 3604(c), in order to comply with the FHA, real estate advertisers would be required to make factual determinations regarding the boundaries of their target market in advance of publishing an ad; they would have to determine both how many types of minorities reside in the target market and the proportion of each type of minority to that market; and the precise duration of the advertising campaign for a particular market. Only then would the advertiser be in a position to decide how many models of each minority would have to be placed in each ad or in the several ads over the duration of the advertising campaign in order to meet the goal of proportionality and thus to avoid the indication of a discriminatory preference.

In light of the numerous variables in the real estate market, many of which cannot

---

**6.** 24 C.F.R. § 109.10 reads as follows:
The purpose of these regulations is to assist all advertising media, advertising agencies and all other persons who use advertising to make, print, or publish or cause to be made, printed, or published any advertisement with respect to the sale, rental, or financing of a dwelling, in compliance with the requirements of Title VIII. These regulations also describe the matters this Department will re-

view in evaluating compliance with Title VIII in connection with investigations of complaints alleging discriminatory housing practices involving advertising.

**7.** For example, if such an ad were preceded or succeeded by many ads with a substantial number of black models or only black models, there would plainly be no discrimination.

be predicted in advance, it is the opinion of the Court that the law could not have been intended to require advertisers to make such determinations. Without exact figures and predictions, advertisers could not conceivably determine whether they would, in fact, be in compliance with section 3604(c).

In addition to these immediate practical implications, there is also the broader problem of the chilling effect of such burdens on advertisers' ability and desire to advertise, implicating First Amendment concerns. *See generally Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980); *Virginia State Board of Pharmacy v. Virginia Citizens Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975).

■ For these reasons, the Court would not be justified in construing section 3604 as establishing a flat rule requiring the use in ads of models of a particular race or sex in particular proportions. When the Congress prohibited advertisements that indicate a discriminatory preference, it could only have intended that the preference be either obvious from the ad itself (as in the *Hunter* case, *supra*) or that such preference be ascertainable through extrinsic circumstances (as in *Saunders, supra*). Usually the proof of such extrinsic circumstances will implicate an element of discriminatory intent. Where such intent is demonstrated, a case would be made out under the Fair Housing Act regardless of the proportion of white to black models in one ad or a series of ads. The Court holds, therefore, that absent a showing of intent to indicate a racial preference or of other extrinsic circumstances revelatory of a racial preference, real estate advertisements do not violate the Fair Housing Act merely because models of a particular race are not used in one ad or a series of ads.

It should be well understood, however, that this does not mean that discriminatory intent would necessarily have to be proved by direct evidence. Such intent could be inferred, for example, by evidence of prior or concurrent discriminatory advertising practices of the defendant, in particular if a challenge to such practices had previously been brought to his attention. A determination regarding the statutory violation would of course have to be made on the facts of the particular case.

### IV

It is unnecessary to determine here whether defendants had the intent to indicate discriminatory preferences through their ads or ad campaigns over the entire period at issue, since the record clearly shows that, under any test, neither defendant possessed the requisite intent during the limitations period set forth in the FHA, *see* 42 U.S.C. § 3612(a), and that, indeed, neither defendant's ads or ad campaigns indicated a racially discriminatory preference during that period under any standard.

■ In order to bring a civil action under the Fair Housing Act, a plaintiff must file his complaint in court within 180 days after the alleged discriminatory housing practice—here discriminatory advertising—occurred. 42 U.S.C. § 3612(a). With respect to Colonial, the relevant period of inquiry therefore is from April 26, 1986 to October 23, 1986, the latter marking the date plaintiffs filed their complaint against Colonial. During that period, over twenty-eight percent of Colonial's ads published in *The Post* featured black models. The population of the Washington metropolitan area is approximately twenty-seven percent black. Clearly, then, Colonial's advertising campaign for that period cannot be said to indicate a discriminatory preference or an intention to make such a preference. This conclusion is strengthened by the fact that in April 1986 Colonial adopted a written policy that appears to reflect Colonial's commitment to equal housing opportunity and that specifically requires nondiscriminatory selection of models for its advertisements.

The relevant period of inquiry with respect to Gerstin is from May 24, 1986 to November 20, 1986. Forty percent of Ger-

stin's ads published in *The Post* during that time period featured one or more black models. As with Colonial, Gerstin's ads during that relevant period did not indicate a discriminatory preference or an intent to make such a preference. In brief, there was no conceivable violation by either defendant during any period not barred by the statute of limitations. For the reasons stated, the Court will grant the motions to dismiss the FHA claims of both defendants.

## V

■ Both defendants have also moved to dismiss the section 1981 and 1982 claims for failure to state claims upon which relief can be granted. That issue may be disposed of more briefly.

Section 1981 provides that all persons shall have the right to enjoy the "full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens," 42 U.S.C. § 1981, and section 1982 provides that all citizens shall have equal rights to purchase, sell, hold and convey real and personal property, regardless of color or race. Plaintiffs claim that defendants' advertising practices violate these provisions in that they deter blacks from applying to lease or purchase property in the advertised developments and that they thereby effectively at the very outset interfere with the opportunity of blacks to purchase or lease property.

Not only does the language of sections 1981 and 1982 fail to refer to advertising in conjunction with real property, an examination of the precedents clearly indicates that no claim has been stated under either section 1981 or section 1982.

Plaintiffs have cited no decided case, and the Court has found none, suggesting that either section 1981 or section 1982 provides a cause of action for advertising that may indicate a racially discriminatory preference. To the contrary; the Supreme Court has explicitly stated that "[section 1982] does not prohibit advertising or other representations that indicate discriminatory preferences." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968).[8] *See also Saunders, supra.*[9]

Plaintiffs argue that, notwithstanding the Supreme Court's statement in *Jones*, they are entitled to prevail because an all-white advertising constitutes "steering," the practice of directing prospective black tenants and purchasers away from "white" housing developments. *See McDonald v. Verble*, 622 F.2d 1227 (6th Cir.1980). However, again, not a single case is cited holding or intimating that an advertising practice constitutes "steering." Steering has generally been found to exist only where there has been rejection or denial of the opportunity to purchase or rent housing to a minority applicant. *See, e.g., Marable v. H. Walker & Associates*, 644 F.2d 390 (5th Cir.1981); *Johnson v. Jerry Pals Real Estate*, 485 F.2d 528 (7th Cir.1973). Plaintiffs here have not claimed, nor could they claim, that they have been denied the opportunity to purchase or rent a housing unit by the defendants. For the reasons stated, the section 1981 and 1982 claims must also be dismissed.

An order consistent with the above is being issued herewith.

### ORDER

In accordance with the Opinion issued contemporaneously herewith, it is this 22nd day of May, 1987

ORDERED that defendant Colonial and defendant Gerstin's motions for summary

---

**8.** Since, as plaintiffs correctly note, the scope of section 1981 parallels the scope of section 1982, *see Runyon v. McCrary*, 427 U.S. 160, 170–71, 96 S.Ct. 2586, 2594–2595, 49 L.Ed.2d 415 (1976), the Supreme Court's statement in *Jones* pertaining to section 1982 applies with equal force to section 1981.

**9.** Moreover, there is nothing in the legislative history of sections 1981 and 1982 to indicate that those statutes were intended to prohibit discriminatory advertising. In fact, as discussed above, Congress felt it necessary, subsequent to the enactment of sections 1981 and 1982, to enact the Fair Housing Act with the objective, *inter alia*, of prohibiting advertising indicating or intended to make a discriminatory preference. 42 U.S.C. § 3604(c).

judgment with respect to plaintiffs' claims under the Fair Housing Act, 42 U.S.C. § 3604(a) and (c), be and they are hereby granted; and it is further

ORDERED that defendant Colonial's and defendant Gerstin's motions to dismiss plaintiffs' claims pursuant to 42 U.S.C. §§ 1981 and 1982 be and they are hereby granted; and it is further

ORDERED that plaintiffs' breach of contract claim be and it is hereby dismissed without prejudice for lack of subject matter jurisdiction; and it is further

ORDERED that, as a result of the granting of defendant Colonial's and defendant Gerstin's motions to dismiss or, in the alternative, for summary judgment, the following motions be and they are hereby denied as moot:

(1) Gerstin's Motion to Strike Declarations;

(2) Plaintiffs' Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment;

(3) Gerstin's Motion to Strike, Seal or Expunge and In Limine;

(4) Plaintiffs' Motion for Disqualification of Counsel; and

(5) Colonial's Motion to Strike the "Related Case" Designations by Plaintiffs;

and it is further

ORDERED that these consolidated cases be and they are hereby dismissed.