Luther M. RAGIN, Jr., Deborah Fish Ragin, Renaye B. Cuyler, Jerome F. Cuyler, Open Housing Center, Inc., and National Association For the Advancement of Colored People, Plaintiffs,

v.

STEINER, CLATEMAN AND ASSOCIATES, INC., and Three Towers Associates, Defendants.

No. 87 Civ. 9028 (LBS).

United States District Court,
S.D. New York.

June 20, 1989.

Patterson, Belknap, Webb & Tyler, New York City (Thomas C. Morrison, Stephen A. Warnke, of counsel), and Washington Lawyers' Committee for Civil Rights Under Law, Washington, D.C. (Kerry Alan Scanlon, of counsel), Grover G. Hankins, Joyce Knox, National Ass'n for the Advancement of Colored People, Baltimore, Md., for plaintiffs.

Rosenman & Colin, New York City (Arnold I. Roth, Lauren Reiter Brody, Michael E. Rosman, Jean Simonoff Marx, of counsel), for defendants.

## OPINION

SAND, District Judge.

Plaintiffs, two black couples who live in New York City, the Open Housing Center, Inc., and the National Association for the Advancement of Colored People ("NAACP"), commenced this action for declaratory, injunctive and monetary relief. The Complaint, as amended, alleges that defendant Steiner, Clateman and Associates, Inc. ("Steiner Clateman"), an advertising agency, and defendant Three Towers Associates, the owner and sponsor of a cooperative apartment complex, North Shore Towers, in Floral Park, New York, were responsible for a series of pictorial advertisements appearing in the New York Times from approximately January 1, 1986 to approximately June 30, 1986. The Complaint alleges "A substantial amount of this pictorial advertising depicted human models. Not once did these ads depict a human model who is black." (¶ 9). The advertisements did not carry "the equal opportunity housing logo required by the Fair Housing Advertising Regulations of the U.S. De-

partment of Housing and Urban Development, 24 C.F.R. § 109.30." (¶ 9).

The amended complaint also asserts continuous and ongoing use by defendants of a "glossy fold-out brochure" with photographs of models "clearly racially identifiable as white." Many of these photographs were the same as those used in the New York Times advertising.

This action is brought pursuant to Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3604(a) and (c), and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982. Defendants have moved to dismiss and plaintiffs have cross-moved for partial summary judgment of the claims arising under 42 U.S.C. § 3604(c).

### *Timeliness of Action*

■ Defendants contend that the action brought by the four individual plaintiffs [1] is time barred by virtue of 42 U.S.C. § 3612(a) which, at the time the action was commenced, provided in pertinent part: "A civil action shall be commenced within one hundred and eighty days after the alleged discriminatory housing practice occurred...."

The last pictorial advertisement appeared in an edition of the New York Times bearing the date Sunday, June 21, 1987. This action was commenced on December 18, 1987. Defendants assert that the appropriate triggering event for measuring the limitations period occurred on June 18, 1987, when the defendants caused the advertisement to be published, *i.e.*, when the order to run the advertisement was placed and was final, so that the action was commenced on the 183rd day. Further, defendants assert that the Sunday, June 21st edition of the New York Times was sold in substantial quantities to the general public on the previous Saturday, June 20th. If this event triggered the limitations period, the action was commenced on the 181st day and is still time barred.

Plaintiffs respond that the complaint does not limit their challenge to discrete New York Times ads but is directed at a pattern of advertising conduct that encompasses not only these ads but also the defendants' elimination of all human models in subsequent advertising in response to complaints filed with the New York State Division of Human Rights, and the continuing use of the brochure. Plaintiffs thus seek to characterize this action as one alleging a "continuing violation" against which the statute of limitations would not serve as a bar. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

But, we believe that even without resort to the continuing violation concept and an analysis of which, if any, claims of injury to the individual plaintiffs might survive such analysis, the action is timely brought on behalf of all plaintiffs.

Section 3612(a) requires that an action for violation be brought within one hundred and eighty days after the alleged discriminatory housing practice. 42 U.S.C. § 3612(a).

Section 3602 defines the term "discriminatory housing practice" to be "an act that is unlawful under section 3604." 42 U.S.C. § 3602. Section 3604(c) provides that it shall be unlawful "[t]o make, print, or publish, or cause to be made, printed, or published, any ... [housing] advertisement ... that indicates any preference, limitation, or discrimination" based on race or color. 42 U.S.C. § 3604(c).

Defendants urge that this is a specific statutory limitation period not couched in traditional common law terms that would measure a limitation period from the accrual of a claim or the occurrence of an injury. *See* Developments in the Law, Statutes of Limitations, 63 Harv.L.Rev. 1177, 1200

---

**1.** The original complaint did not contain allegations with respect to defendants' ongoing use of the brochure. After defendants moved to dismiss on the ground of timeliness as to all plaintiffs, the complaint was amended to add allegations with respect to the brochure. The parties agreed that the pending motion would be deemed addressed to the amended complaint and defendants withdrew their motion as to the Open Housing Center and NAACP. The motion is pressed as to the individual plaintiffs since there is no allegation that they were ever given or saw the brochure.

(1950). Here, defendants urge, Congress chose to measure the limitations period from the date of a defendant's act without regard to whether plaintiffs knew or could have known of such act or knew or could have known that they sustained any injury as a result.

We agree with plaintiffs that what Congress intended is the critical inquiry, not common law concepts of limitations. We find it difficult to believe that Congress would have intended a claim under this remedial civil rights statute to be barred even before an injured plaintiff could have known of defendant's conduct, let alone its adverse effects. Yet, this is precisely what would occur, under defendants' analysis, if an advertiser placed a discriminatory ad with a publisher more than 180 days prior to publication. We reject defendants' claim that June 18th, the date when defendants' placement of the ad was complete, is the commencement date for purposes of measuring the limitations period.

In spite of defendants' claim, *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (per curiam) and *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) are not to the contrary. Although the Court held in these § 1983 and Title VII cases respectively that the limitations period commenced when plaintiff was informed of the prospective discriminatory firing rather than the date of actual firing, it did not suggest that the limitations period might have commenced even before notification.[2]

We next address defendants' contention that Saturday, June 20, not Sunday June 21, is the appropriate commencement date. This contention borrows from the body of learning that has grown from the single publication rule for limiting defamation actions. In such cases, courts have measured limitations from the date of actual distribution, not the date appearing on the face of the publication (which for magazines may be as much as a week or month later).

But a rule that was designed to limit defamation suits, generally disfavored actions, has little relevance in discerning congressional intent in a remedial civil rights statute. In the book and magazine publishing industries, the official publication date bears but little relation to the time of actual distribution and this is generally understood to be the case. A daily newspaper, such as the New York Times, presents a different type of publication. Had Congress considered the matter, we doubt it would have wanted the limitations period to begin the day before the date appearing on the the face of the daily newspaper because some dealers make copies available to some readers on the previous day.

We conclude that the action was timely brought by all plaintiffs.

### The Section 3604(a) Claim

Section 3604(a) makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make available or deny, a dwelling to any person because of race [or] color." 42 U.S.C. § 3604(a). Defendants move to dismiss this claim on the ground that the complaint does not allege any such conduct on the part of defendants. Plaintiffs have not briefed this question but their counsel stated at oral argument that they were not "abandoning" the § 3604(a) claim. We fail to discern a basis for a § 3604(a) claim and it is dismissed. *See Spann v. Colonial Village, Inc.*, 662 F.Supp. 541, 544 n. 4 (D.D.C.1987).

### The Section 3604(c) Claim

■ Section 3604(c) makes it unlawful to "publish, or cause to be ... published any ... advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color ... or an intention to make any such preference, limitation, or

---

**2.** The special considerations that are present when a belated challenge is made to a facially neutral seniority system are not present here. *Cf. Lorance v. AT & T Technologies*, — U.S. —, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989). In any event, the adoption of a seniority plan in a collective bargaining agreement is an event known to the parties or which could readily be ascertained, unlike the unpublicized placement of an order for an ad.

discrimination." 42 U.S.C. § 3604(c). Defendants move to dismiss on the ground that the allegations of use of only white models are insufficient to support an inference that the ads indicate a preference, limitation or discrimination.

Plaintiffs assert that defendants have published, over an 18 month period, 27 separate display ads with all white models. When asked to correct this by use of future ads with non-white models, defendants shifted their advertising to ads that had no human depictions. We believe that the complaint adequately states a claim under § 3604(c). *See Saunders v. General Services Corp.*, 659 F.Supp. 1042, 1058 (E.D. Va.1987).

Defendants rely heavily on Judge Harold Greene's opinion in *Spann, supra,* 662 F.Supp. at 541. *Spann,* however, is entirely distinguishable from a case in which only all white models appear in advertising. In *Spann,* during the relevant period, defendants ran ads with both white and black models. Judge Greene held that § 3604(c) did not require a flat rule of mathematical proportionality and that the Fair Housing Act was not violated merely because models of a particular race were not used in one ad or series of ads. *Id.* at 546. Judge Greene has himself distinguished this circumstance from one in which only white models have been consistently used. *Spann v. The Carley Capital Group,* No. 87–0054, slip op. at 7 (D.D.C., Dec. 13, 1988).[3] We see no basis for dismissing the § 3604(c) claim.

### Plaintiffs' Motion for Summary Judgment Under § 3604(c)

We reject, however, plaintiffs' contention that this Court can determine as a matter of law that the Fair Housing Act has been violated by simply examining the assembled photographs. Defendants' Rule 3(g) response adequately demonstrates the existence of factual disputes that render plaintiffs' motion premature. *E.g.,* Rule 3(g) ¶ 2(c) (denial of assertion that Steiner Clateman helped prepare and approved advertising in question). We deny plaintiffs'

motion without prejudice to renewal upon completion of discovery.

### The 42 U.S.C. § 1981 and § 1982 Claims

█ Relying on *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968); *Spann, supra,* 662 F.Supp. at 547; *Saunders, supra,* 659 F.Supp. at 1063, defendants move to dismiss the § 1981 and § 1982 claims. Plaintiffs resist this, urging that the Supreme Court's language in *Jones* was mere dictum accepted by the district courts in *Saunders* and *Spann.* Plaintiffs rely on the Supreme Court's language that Section "1982 bars *all* racial discrimination ... in the sale or rental of property." *Jones, supra,* 392 U.S. at 413, 88 S.Ct. at 2189.

Granting that it is possible that some other forms of discrimination, when coupled with discriminatory advertising, may give rise to claims under both the Fair Housing Act and §§ 1981 and 1982, the present complaint is directed solely to defendants' advertising. (Although apartment advertising may well be said to relate to opportunities to enter into contracts, and therefore, to be distinguishable from the issues presented in *Patterson v. McLean Credit Union,* No. 87–107 (S.Ct. June 15, 1981) (LEXIS, Genfed Library, Court file), relevant here is the Supreme Court's approach to interpretation of § 1981 in which it expressed a reluctance "to read an earlier statute broadly where the result is to circumvent the detailed remedial scheme constructed in a later statute.").

If plaintiffs uncover evidence of other discriminatory conduct on the part of defendants cognizable under § 1981 or § 1982, they may seek leave to amend the complaint to add such further claims; however, the present complaint fails to allege valid § 1981 or § 1982 claims and the motion to dismiss is granted as to these claims.

### CONCLUSION

Defendants' motion to dismiss is granted with respect to claims brought pursuant to

---

3. As Judge Greene noted, use of all white human model display advertising is contrary to

H.U.D. regulations which are entitled to deference.

42 U.S.C. § 3604(a) and 42 U.S.C. §§ 1981 and 1982. The motion to dismiss is denied insofar as the action is brought pursuant to 42 U.S.C. § 3604(c). Plaintiffs' motion for summary judgment as to 42 U.S.C. § 3604(c) is denied without prejudice to renewal after completion of discovery.

SO ORDERED.