**HOUSING OPPORTUNITIES MADE EQUAL, Plaintiff,**

v.

**The CINCINNATI ENQUIRER, INC., Defendant.**

No. C–1–89–728.

United States District Court, S.D. Ohio.

Feb. 19, 1990.

Robert Newman, Cincinnati, Ohio, for plaintiff.

Glenn Whitaker, Cincinnati, Ohio, for defendant.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on a motion to dismiss (Doc. No. 2) filed by defendant The Cincinnati Enquirer, Inc. ("Enquirer"). Defendant seeks dismissal of this action pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff Housing Opportunities Made Equal, Inc. ("HOME") filed an opposing memorandum (Doc. No. 3) and defendant subsequently replied. (Doc. No. 4)

HOME is a non-profit corporation organized under the laws of Ohio. The organization promotes equal opportunity in housing in the Cincinnati metropolitan area. The Enquirer is a corporation located in Cincinnati, Ohio which publishes, prints, and distributes the newspaper, *The Cincinnati Enquirer.* Plaintiff alleges in its complaint that the Enquirer publishes racially discriminatory display advertisements for the rental or sale of apartments, condominiums, cooperatives and single family homes in violation of the Fair Housing Act of 1968, 42 U.S.C. §§ 3601 et seq., as amended, the Civil Rights Act of 1866, 42 U.S.C. § 1982, and the Thirteenth Amendment of the United States Constitution. Specifically, HOME contends that virtually none of the housing advertisements published by the Enquirer which depict humans contain black human models, indicating a preference based on race or color. HOME also claims that the adver-

tisements printed in *The Cincinnati Enquirer* violate the equal housing opportunity logo type size requirements set forth in regulation 24 C.F.R. § 109.30(a) promulgated by the United States Department of Housing and Urban Development ("HUD").

### *Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6)*

A Rule 12(b)(6) motion to dismiss requires the Court to determine whether a cognizable claim has been pleaded in the complaint. The basic federal pleading requirement is contained in Fed.R.Civ.P. 8(a) which states that a pleading "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). Rule 8(a)(2) operates to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). A Court examines a complaint in light of the objectives of Rule 8 using the standard articulated in *Jones v. Sherrill,* 827 F.2d 1102 (6th Cir.1987):

> In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826 [105 S.Ct. 105, 83 L.Ed.2d 50] (1984). The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief. *Id.* at 158; *Conley v. Gibson,* 355 U.S. 41 [78 S.Ct. 99, 2 L.Ed.2d 80] (1957).

*Id.* at 1103.

■ The admonishment to liberally construe plaintiff's claim when evaluating a Rule 12(b)(6) dismissal does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint ... must contain either direct or inferential allegations respecting all the material elements

necessary to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985) (*quoting In re: Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir.1981), *cert. dismissed*, 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983)); *see also Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir.1984); Wright, Miller & Cooper, Federal Practice and Procedure: § 1216 at 121–23 (1969). The United States Court of Appeals for the Sixth Circuit recently clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir.1988); *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n. 3 (1st Cir.1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). In its scrutiny of the complaint, a court construes all well-pleaded facts liberally in favor of the party opposing the motion. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### The Fair Housing Act Claim

The Enquirer contends that HOME fails to state a cause of action under Section 804(c) of the Fair Housing Act of 1968 [1] which provides in pertinent part that it shall be unlawful "[t]o make, print, or publish, or caused to be made, printed or published, any ... [housing] advertisement ... that indicates any preference, limitation, or discrimination" based on race or color. 42 U.S.C. § 3604(c). Defendant urges the Court to rule that mere allegations that the housing advertisements printed in *The Cincinnati Enquirer* contain virtually all white human models are not sufficient to establish a violation of Section 3604(c).

The basis of HOME's allegations of actionable advertising practices by the Enquirer is the alleged underrepresentation of blacks in housing advertisements which use human models. HOME states that for the past twenty years the Enquirer has published real estate display advertisements containing human models "of whom virtually none were black." Complaint ¶ 9. Specifically, the complaint charges that less than 1% of these advertisements appearing in the Sunday edition of *The Cincinnati Enquirer* contain a black person. Group photographs featured in the real estate section allegedly consist exclusively of white people. Contrasted with a black population which reaches 34% in the City of Cincinnati, 19% in Hamilton County, and 12% in the Metropolitan Statistical Area, HOME argues that the "overwhelmingly cumulative message of this advertising is: 'whites preferred.'" Plaintiff's Memorandum at 2. At issue is whether the Enquirer's practice of publishing real estate advertisements which contain a black person less than 1% of the time indicates a preference based on race or color.

 It is clear from the case law interpreting Section 3604(c) that a violation is not triggered merely because models of a particular race were not used in one advertisement or in a series of advertisements. *Ragin, supra* at 713 quoting *Spann, supra* at 546. A flat rule of mathematical proportionality which would require a newspaper to publish only advertisements which represent the racial mix of a given population has been rejected as both an unworkable

---

1. The complaint also alleges that the Enquirer violated Section 3604(a), although neither defendant nor plaintiff addresses the issue of the applicability of this provision in their briefs. The Court notes that HOME does not contend that the Enquirer refused to sell, rent, negotiate for the sale or rental of, or otherwise denied a dwelling to any person on the basis of race or color. The Section 3604(a) claim appears to be without any basis. See *Ragin v. Steiner, Clateman and Associates, Inc.*, 714 F.Supp. 709, 712 (S.D.N.Y.1989); *Spann v. Colonial Village, Inc.*, 662 F.Supp. 541, 544 n. 4 (D.D.C.1987).

requirement [2] and an unjustifiable interpretation of Section 3604(c). *Spann, supra* at 545–46. The kinds of advertising Congress intended to prohibit through the enactment of Section 3604(c) fall into two categories: (1) advertisements which communicate in an obvious and undeniable way a discriminatory preference; or (2) advertisements rendered discriminatory through the proof of extrinsic circumstances which demonstrate a discriminatory intent. *Id.* at 546. An example of the first, the publication of a classified advertisement for a "private white home," was held violative of Section 3604(c) by the Court of Appeals for the Fourth Circuit. *See United States v. Hunter*, 459 F.2d 205 (4th Cir.), *cert. denied*, 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972).

The second type of Section 3604(c) violation was addressed in *Saunders v. General Services Corp.*, 659 F.Supp. 1042 (E.D.Va. 1987). In that case, the paucity of black models used in a brochure published by a corporation which operated and managed apartment complexes was linked to extrinsic evidence which demonstrated the corporation's intention to indicate a preference for white tenants through their advertising. The *Saunders* Court held that the "totality of the evidence" proved a violation of Section 3604(c). *Id.* at 1059. The "extrinsic evidence" test was also employed in *Ragin, supra* in which plaintiffs asserted a Section 3604(c) violation against an advertising agency and an apartment complex owner who published newspaper advertisements and a brochure depicting white models exclusively. The *Ragin* Court concluded that the total absence of black models in the advertisements and the brochure, coupled with the defendants' decision to abandon their use of human models in their advertising when requested to use non-

white models, adequately stated a claim under the Fair Housing Act of 1968.

HOME must establish a cognizable claim under Section 3604(c) pursuant to either the *Hunter* rule, where the discriminatory preference is obvious, or the "extrinsic evidence" test followed by the *Saunders* and *Ragin* Courts. After examining the complaint for allegations of conduct from which a discriminatory intent on the part of the Enquirer can be inferred, the Court concludes that HOME has not asserted any facts which reveal a racial preference on the part of the Enquirer.[3] Consequently, the complaint does not withstand scrutiny under the "extrinsic evidence" analysis.

HOME relies instead on its contention that the low percentage of housing advertisements appearing in *The Cincinnati Enquirer* which contain black models indicates a discriminatory preference which is obvious and undeniable as found in *Hunter, supra*. However, absent a showing of intent to indicate a racial preference or of other extrinsic circumstances revelatory of a racial preference, real estate advertisements do not violate the Fair Housing Act of 1968 merely because models of a particular race are not used in one advertisement or in a series of advertisements. *Spann, supra* at 546. The *Spann* Court rejected the argument that a series of housing advertisements published in a daily newspaper, some of which depicted white models only, some only black models, and some a mixture of both, was actionable without any proof of discriminatory intent. *Id.* at 544. Section 3604(c) cannot be construed to require a newspaper to evaluate the racial proportions of its advertising pages. The chilling effect of such a burden implicates First Amendment concerns. *See Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557,

---

**2.** Compliance with Section 3604(c) under a proportionality rule would become virtually impossible. Requiring real estate advertisers, let alone news publications, to determine the racial mix of the population within the boundaries of their target market in advance of publishing an advertisement imposes an unrealistic and onerous duty to predict a market fraught with variables. See *Spann,* supra at 545.

**3.** The Court notes that HOME does not argue that the Enquirer's refusal to cease its present advertising practices constitutes an intention to indicate a discriminatory preference in the real estate section of *The Cincinnati Enquirer.* It is obvious that a mere refusal to cease practices which are not actionable in the first instance does not provide evidence of intentionality.

100 S.Ct. 2343, 65 L.Ed.2d 341 (1980); *Virginia State Board of Pharmacy v. Virginia Citizens Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975).

■ Finally, HOME argues that the HUD regulations applicable to Section 3604(c), specifically 24 C.F.R. § 109.30(a) and (b), have the force of law and are binding authority in a judicial disposition of a claim brought under Section 3604(c). HOME's contention is simply without merit; the HUD regulations do not apply to litigation in court. *Spann, supra* at 545.

Count I of the complaint, alleging violations of Sections 804(a) and (c) of the Fair Housing Act of 1968, does not contain allegations sufficient to state valid causes of action and accordingly is dismissed.

### The Section 1982 Claim

■ The Enquirer also requests dismissal of HOME's claim brought under Section 1982 of 42 U.S.C. which provides: [4]

All citizens of the United States shall have the same right in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property.

Relying upon the United States Supreme Court's statement in *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 413, 88 S.Ct. 2186, 2189, 20 L.Ed.2d 1189 (1968) that "[Section 1982] does not prohibit advertising or other representations that indicate discriminatory preferences," the Enquirer argues that the statute does not apply to plaintiff's advertising claims. HOME simply reasserts its contention that allegations of discriminatory advertising practices state a cognizable claim under Section 1982. However, plaintiff offers no authority to support the application of the statute in this context.

■ Section 1982's relevance to discriminatory advertising claims was not an issue properly before the *Jones* Court. Nevertheless, the dicta cited by the Enquirer indicates the intended scope of Section 1982 which the Supreme Court noted "is not a comprehensive open housing law." *Jones, supra* at 413, 88 S.Ct. at 2189. A mere expression of a preference to sell or rent housing based on race may indeed discourage minorities from exercising their right to rent or purchase certain property but it does not deny them the opportunity to do so. *Saunders, supra* at 1062; *see Spann, supra* at 547. Allegations of discriminatory advertising alone, without any evidence of other actionable discriminatory conduct, do not constitute a violation of Section 1982. *Ragin, supra* at 713. HOME fails to state a cognizable claim under Section 1982 and accordingly Count II of the complaint must also be dismissed.

In sum, plaintiff fails to allege facts which state a claim under Sections 804(a) or (c) of the Fair Housing Act of 1968. The complaint does not contain allegations which constitute a valid cause of action under 42 U.S.C. § 1982 and by implication the Thirteenth Amendment. Accordingly, the motion of defendant Enquirer to dismiss plaintiff's claims for failure to state a cause of action is hereby GRANTED. It is hereby ORDERED that this action is dismissed with prejudice at plaintiff's costs.

IT IS SO ORDERED.

---

**4.** Plaintiff alleges in Count II violations of Section 1982 as well as the Thirteenth Amendment which prohibits, along with slavery and involuntary servitude, acts which classify a person as a former slave. *Baker v. McDonald's Corp.,* 686 F.Supp. 1474, 1480 n. 12 (S.D.Fla.1987), aff'd, 865 F.2d 1272 (1988). HOME may not maintain a direct private cause of action under the Thirteenth Amendment, *Sanders v. A.J. Canfield Co.,* 635 F.Supp. 85, 87 (N.D.Ill.1986), but must resort to statutory remedies, such as Section 1982, created by Congress under the power granted to it by that amendment. *Id.*