Kim **FENWICK–SCHAFER,** et al., **Plaintiffs,**

v.

**STERLING HOMES CORP.,** et al., **Defendants.**

**Civ. A. No. R–90–1376.**

United States District Court, D. Maryland.

April 1, 1991.

C. Christopher Brown, Andrew David Freeman, Brown, Goldstein and Levy, Baltimore, Md., David G. Webbert, Washington, D.C., for plaintiffs.

Theodore Sherbow, Michael P. Smith, Weinberg & Green, Baltimore, Md., for defendant Sterling Homes Corp.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

Pending before the Court in the above-captioned case is the motion for summary judgment of defendants Sterling Homes Corporation and Sterling Properties Associates V, Inc. (collectively, "defendants"). The motion has been fully briefed by the parties, and is ripe for consideration. Pursuant to Local Rule 105.6, the Court shall rule without a hearing.

### I. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure serves the important purpose of "conserv[ing] judicial time and energy by avoiding unnecessary trial and by providing a speedy and efficient summary disposition" of litigation in which the plaintiff fails to make some minimal showing that the defendant may be liable on the claims alleged. *Bland v. Norfolk & Southern R.R. Co.*, 406 F.2d 863, 866 (4th Cir.1969). The applicable standards for analyzing a motion for summary judgment under Rule 56 are well-established. The defendant seeking summary judgment bears the initial burden of showing the absence of any genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In determining

whether the defendant has sustained this burden, this Court must consider whether, when assessing the evidence in the light most favorable to the plaintiff, a "fair-minded jury could return a verdict for the plaintiff...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *Pulliam Investment Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987). Nevertheless, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *see also Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984). The plaintiff must identify for the Court some dispute of fact that is material to the legal issues presented in the case in order to successfully oppose a motion for summary judgment. "The plain language of Rule 56(b) mandates entry of summary judgment, after an adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. It is against these standards that the Court shall review defendants' motion.

## II. FACTUAL BACKGROUND

Plaintiff Baltimore Neighborhoods, Inc. ("BNI") is a non-profit Maryland corporation founded in 1959. BNI works to create and maintain an open housing market and viable interracial communities. BNI investigates complaints of housing discrimination and, if appropriate, institutes lawsuits or administrative proceedings. Plaintiff Kim Fenwick–Schafer is a black woman who, with her husband, began looking for housing for their family in the Fall of 1989. In aid of their search, Fenwick–Schafer reviewed real estate advertisements in area

newspapers. During that same time, BNI began an investigation of the use of human models in real estate advertising.

Defendants are real estate developers active in the Baltimore–Washington metropolitan area. Advertisements for their Baltimore area properties appeared in various Maryland publications, predominantly in the Baltimore *Sunpapers* and the *Sunday Sun.* Plaintiffs allege that over a two-year period, from 1988 through 1990, defendants caused to be published at least 70 human model ads depicting 132 white persons and no black persons. As the Baltimore metropolitan area population is approximately 26% black,[1] plaintiffs believed that the total lack of black models in defendants' ads violated 42 U.S.C. § 3604(c), which makes it unlawful to:

> "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race [or] color [...], or an intention to make any such preference, limitation, or discrimination."

This suit was filed in the Spring of 1990.

The illegal action alleged in this case is defendants' use of all-white advertising in a major metropolitan area which has a sizable black population. Although there is some dispute over the length and extent of defendants' campaigns, for the purposes of this motion plaintiffs' version must be accepted as true. Accordingly, defendants are considered to have engaged in an all-white advertising campaign from 1988 through 1990 well past the date that this suit was filed.[2]

The parties agree that the defendants' advertisements contained the Equal Housing Opportunity logo. Defendants also assert, and plaintiffs do not contradict, that the ads contain no discriminatory language. Moreover, there does not appear to be any extrinsic evidence of discriminatory intent

1. According to statistics cited by plaintiffs.

2. Defendants allege that even before this suit was filed defendants had pulled their scheduled ads (which contained white models) and replaced them with model-less ads in response to

similar suits directed at other developers. Plaintiffs allege that defendants continued their all-white advertisements in area magazines six months after this suit was filed.

on the part of defendants: employees were instructed to abide by all laws pertaining to equal housing, appropriate logos were prominently displayed, and in early 1990 both defendants instituted affirmative housing plans with HUD in order to obtain FHA financing. The sole issue, therefore, is defendants' exclusive use of white models in their advertising. Defendants argue that, as a matter of law, their use of white models cannot constitute a violation of § 3604(c). Plaintiffs disagree.

## III. APPLICABLE LAW

### A. *Plaintiffs' § 3604(c) Claim*

■ Section 3604(c) makes it unlawful to publish or cause to be published any housing advertisement which indicates a preference or discrimination based on race. In 1972 the Fourth Circuit held that the relevant standard is the "ordinary reader['s] natural interpretation" of the ad in question. *U.S. v. Hunter*, 459 F.2d 205, 215 (4th Cir.1972) (phrase "white home" held to indicate a racial preference). This standard has been adopted and applied by the D.C. Circuit, *Spann v. Colonial Village, Inc.*, 899 F.2d 24 (1990), and by the Second Circuit. *Ragin v. New York Times Co.*, 923 F.2d 995 (1991). Thus, § 3604(c) is violated "if an ad for housing suggests to an ordinary reader that a particular race is preferred or dispreferred for the housing in question." *Ragin*, 923 F.2d at 999. Plaintiffs need not show that defendants had a discriminatory intent although this evidence may lend additional support to plaintiffs' case; it is the suggestion contained in the ad itself which is the key. *Id.* at 1000 ("[T]he intent of the creator of an ad may be relevant to a factual determination of the message conveyed, *see Saunders v. General Services Corp.*, 659 F.Supp. 1042 (E.D.Va.1987), but the touchstone is nevertheless the message.")

The suggestion may be made through the use of words, as it was in *Hunter*, or the suggestion may be made through the use of pictures. There is no reason for distinguishing between the medium. The same standard applies to both: the natural interpretation of the ordinary reader. The D.C. and Second Circuits have adopted and applied this standard in human-model-picture cases. *See Spann* and *Ragin, supra.* The Eastern District of Virginia has also applied this standard in a human-model-picture case. *Saunders v. General Services Corp.*, 659 F.Supp. 1042, 1058 (E.D.Va. 1987). This Court too holds it to be the appropriate standard.

Defendants do not dispute the applicability of the *Hunter* standard to the case at issue. However, defendants argue, the exclusive use of white models cannot, by itself, suggest to an ordinary reader that a particular race is preferred or not. More particularly, defendants argue that *their* exclusive use of white models cannot suggest to an ordinary reader a racial preference. Defendants cite *Spann v. Colonial Village, Inc.*, 662 F.Supp. 541 (D.D.C.1987), *rev'd* 899 F.2d 24 (D.C.Cir.1990) in support of their argument that in order to prove a case of improper advertising under § 3604(c), plaintiffs must demonstrate a discriminatory preference "obvious from the ad itself [...] or [...] ascertainable through extrinsic circumstances [which] will implicate an element of discriminatory intent." 662 F.Supp. at 546. Defendants also cite *Housing Opp. Made Equal v. Cincinnati Enquirer*, 731 F.Supp. 801, 803 (S.D.Ohio 1990), which relied on *Spann*, in support of this proposition.

Defendants reliance on *Spann* is open to two main attacks. First, the district court's opinion in *Spann* was reversed by the D.C. Circuit Court. 899 F.2d 24. The reversal was on the basis of the district court's strict application of the statute of limitations [3] rather than its proposed standard of liability. Still, the D.C. Circuit then remanded the case for further consideration of the plaintiffs' claim that the use of

---

**3.** The district court had only evaluated the ads published within the last 180 days before plaintiffs' complaint was filed. The circuit court held that the publication of the advertisements was a continuing violation, so that so long as the last asserted occurrence was within the limitations period, all of the plaintiffs' claims (which encompassed time periods farther back) were timely. 899 F.2d at 34–35.

white models only indicated a racial preference in violation of § 3604(c). The district court had dismissed the claim because, in the limited 180–day time period which the court had considered, defendant's ads were 30% to 40% black.[4] The circuit court said that plaintiffs' complaint of the *exclusive* use of white models was not time-barred and should be considered. Plaintiffs in this case also complain of defendants' exclusive use of white models. *Spann* on appeal suggests that this complaint should be considered.

The second point is that which was made by the Second Circuit in *Ragin v. New York Times Co., supra.* Defendant Times had argued, as defendants do here, that there is no liability under § 3604(c) if "the ad in question is not facially discriminatory and the publisher has no other evidence of discriminatory intent." 923 F.2d at 999. The Second Circuit responded:

"The Times's conception of what kinds of ads might be deemed by a trier of fact as facially suggesting to an ordinary reader a racial preference is intolerably narrow. At oral argument, suggested as examples of such a facial message were real estate advertisements depicting burning crosses or swastikas. We do not limit the statute—not to say trivialize it—by construing it to outlaw only the most provocative and offensive expressions of racism or statements indicating an outright refusal to sell or rent to persons of a particular race. Congress used broad language in § 3604(c), and there is no cogent reason to narrow the meaning of that language. Ordinary readers may reasonably infer a racial message from advertisements that are more subtle than the hypothetical swastika or burning cross, and we read the word 'preference' [in § 3604(c)] to describe any ad that would discourage an ordinary reader of a particular race from answering it."

*Id.* at 999–1000.

█ Moreover, defendants' argument that the use of models alone cannot suggest a racial preference is undermined by the existence of agency regulations on the

issue. In order to aid the evaluation of advertisers' compliance with § 3604(c), the Department of Housing and Urban Development ("HUD") promulgated a series of regulations found at 24 C.F.R. § 109 et seq. Section 109.30(b) speaks specifically to the issue of the use of human models in advertising and provides as follows:

"Human models in photographs, drawings, or other graphic techniques may not be used to indicate exclusiveness because of race [or] color [...]. If models are used in display advertising campaigns, the models should be clearly definable as reasonably representing majority and minority groups in the metropolitan area [...]. Models, if used, should portray persons in an equal social setting and indicate to the general public that the housing is open to all without regard to race [or] color [...], and is not for the exclusive use of one such group."

Defendants cite *Spann,* 662 F.Supp. at 544–45, for the proposition that these regulations are "not applicable to litigation in court." This Court agrees that these regulations were promulgated as relating to the Department's compliance evaluation and enforcement responsibilities, 24 C.F.R. § 109.10, and that these regulations may not have the force of law or be specifically enforceable as such. *Housing Opp. Made Equal v. Cincinnati Enquirer,* 731 F.Supp. at 803 (citing *Spann,* 662 F.Supp. 541). This Court finds, however, that the regulations are relevant to this litigation and are entitled to deference. *Ragin v. Steiner, Clateman and Associates, Inc.,* 714 F.Supp. 709, 713 n. 3 (S.D.N.Y.1989); *Ragin v. New York Times Co.,* 923 F.2d at 1000 n. 1; *Hunter,* 459 F.2d at 215 n. 11. Thus, plaintiffs quite properly cite to these regulations which support their position that "racial messages conveyed by the use of human models are not exempted" from § 3604(c)'s coverage. *Ragin v. New York Times,* 923 F.2d at 1000 n. 1.

Defendants distinguish the cases cited by plaintiffs in support of their cause of action. The distinctions noted, however, do not extinguish the legal viability of plain-

---

**4.** Defendants were apparently responding to administrative pressure. 899 F.2d at 34.

tiffs' claim. *Ragin v. The New York Times Co.*, 726 F.Supp. 953 (S.D.N.Y.1989), *aff'd* 923 F.2d 995 (2nd Cir.1991), was decided on a motion to dismiss, not a motion for summary judgment. The holding of the case, however, was that exclusive use of models of one race may violate § 3604(c). Plaintiffs in this case have alleged and have preliminarily demonstrated defendants' exclusive use of white models. *Saunders v. General Services Corp.*, 659 F.Supp. 1042 (E.D.Va.1987), was decided after a judge trial and the record was replete with extrinsic evidence of defendant's discriminatory intent. The court, however, cited the *Hunter* rule, noted that plaintiffs need not demonstrate intent to prove a § 3604(c) violation, and made no reference to the extrinsic evidence in the section of its opinion dealing with the § 3604(c) issue.

■ Defendants' conduct in this case does not appear to be as egregious as that condemned in the cases cited by plaintiffs. Defendants do not have a 20–year history of all-white advertising, *Ragin v. New York Times, supra;* defendants used the HUD Equal Housing Opportunity logo in their ads, *Ragin v. Steiner, Clateman and Associates, Inc., supra;* and defendants have not demonstrated discriminatory intent in other areas of their business, *Saunders, supra.* These are all issues of degree, however. Defendants may present this evidence and argue these points to the jury. The essential question remains: does defendants' exclusive use of white models in an area with a sizable black population over a time period of 25 months suggest to an ordinary reader [5] a racial preference in violation of 42 U.S.C. § 3604(c)? This Court cannot say that as a matter of law it does not.

B. *Plaintiffs' Request for Punitive Damages*

Plaintiffs have included in their complaint a request for punitive damages. Defendants argue that even interpreted in the light most favorable to plaintiffs, the evidence does not support such an award. Plaintiffs, of course, disagree.

■ "Punitive damages are awarded in federal question cases when a defendant has acted 'with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so.'" *Pinchback v. Armistead Homes Corp.*, 689 F.Supp. 541, 556 (D.Md. 1988) (citations omitted); *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).

■ Plaintiffs allege that defendants (or their agents) knew for some time that their publication of all-white advertisements was or may have been violating the law, but that defendants continued to publish the complained-of ads. This knowledge is said to have come from defendants' general familiarity with HUD regulations and from defendants' knowledge of a Washington *Post* policy relating to the publication of all-white ads. Plaintiffs cite deposition testimony in support of these allegations.

Defendants, in return, cite deposition testimony to the effect that while generally familiar with HUD regulations, defendants and their agents did not know of any regulation regarding the use of human models in advertising. Defendants also fail to see the relevance of a *Post* policy as regards this case.[6]

There is a sufficient dispute of fact to preclude judgment on this issue at this point. The degree of defendants' knowledge is unknown. Plaintiffs' have shown that defendants did use black models in their Washington D.C. ads but did not use such models in the Baltimore area ads. Plaintiffs have also shown that defendants continued to publish all-white ads even after this suit had been filed. This could indicate that defendants were aware of or had been forced to abide by the HUD regulations in one area but chose to avoid compliance in another in reckless or intentional violation of plaintiffs' rights. Or not. The

---

**5.** "The ordinary reader is neither the most suspicious nor the most insensitive of our citizenry." *Ragin v. New York Times Co.,* 923 F.2d at 1002.

**6.** Defendants' knowledge could have been obtained from any source, including *Post* requirements that referred advertisers to the law.

facts may become clearer at trial. At this point, however, the Court will not dismiss or strike plaintiffs' claim for punitive damages.

## IV. CONCLUSION AND ORDER

For the reasons stated in the forgoing Memorandum, it is this 28th day of March, 1991 by the United States District Court for the District of Maryland,

ORDERED:

That defendants' motion for summary judgment is DENIED.