**UNITED STATES of America, Appellant,**

v.

**J. Rogers BADGETT, Sr., d/b/a Georgetown Apartments; Jean Brittain, Appellees.**

**No. 91–3458.**

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1992.

Decided Oct. 9, 1992.

Rehearing and Rehearing En Banc Denied Nov. 23, 1992.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge and BEAM, Circuit Judge.

BEAM, Circuit Judge.

This appeal comes to us from a Fair Housing Act case filed in the district court for the Eastern District of Arkansas. The district court found a housing policy requiring single occupancy for one-bedroom apartments to be facially neutral and therefore not to be a violation of the Fair Housing Act, as amended in 1989. We reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Georgetown Apartments, ("Georgetown"), is a 156–unit apartment complex located in Little Rock, Arkansas. J. Rogers Badgett, Sr., ("Badgett") is the sole owner of Georgetown Apartments, and Jean Brittain, ("Brittain") was employed by Badgett as a Georgetown leasing agent.[1] Until March of 1989, Georgetown was an all-adult complex that had an explicit policy which excluded families with children. Georgetown also has a long-standing policy of limiting occupancy of one-bedroom apartments to one person. Appellees admitted during discovery that they also have a policy limiting occupancy of two- and three-bedroom apartments to two people.

The applicable Little Rock Code requires that every dwelling have at least 150 square feet of floor space for the first occupant and at least 100 square feet of additional space for each additional occupant. Every room to be used for sleeping must have at least 70 square feet of space for the first occupant, and at least 50 square feet for each additional occupant. Little Rock Code § 8–406(a) and (b), Appellant's Appendix at 23. Total living space in a one-bedroom apartment at Georgetown is 636 square feet. It is undisputed that the living space in a one-bedroom apartment is well in excess of the legally required mini-

Rebecca K. Troth, Dept. of Justice, Washington, D.C., argued (David Flynn and Marie McElderry, on brief), for appellant.

Counsel who presented argument on behalf of the appellee was Thomas J. Walsh, Jr., Memphis, Tenn., argued (Glen Reid, Jr., on brief), for appellee.

1. For the sake of clarity, Georgetown, Badgett and Brittain will be referred to collectively as Appellees.

mum for two persons under the Little Rock municipal code.

On May 15, 1989, Ms. Donna Mayeaux, ("Mayeaux"), and her five-year-old daughter, Lauren, went to Georgetown to inquire about renting a one-bedroom apartment. Brittain refused to show Mayeaux a one-bedroom apartment on the grounds that Georgetown did not rent one-bedroom apartments to more than one person. Brittain mentioned the two-bedroom apartments, but told Mayeaux the complex had no playground equipment, and no other children of the same age, so her daughter would have no playmates. Brittain admitted in court that such information would have discouraged her from renting at Georgetown, had she been in Mayeaux's position. Mayeaux and her daughter left without looking at an apartment.

Mayeaux filed a complaint with the Department of Housing and Urban Development ("HUD") alleging that Appellees discriminated against her on the basis of her family status. The Secretary of HUD filed a charge with a HUD administrative law judge. Badgett removed to federal court under 42 U.S.C. § 3612(a) and on April 16, 1990, the United States filed a complaint in the Eastern District of Arkansas pursuant to 42 U.S.C. § 3612(o).[2]

The complaint alleged that Appellees illegally discouraged Mayeaux from renting any apartment at Georgetown on the basis of her familial status, and refused to rent Mayeaux a one-bedroom apartment because of an unreasonable occupancy standard, in violation of 42 U.S.C. § 3604(a)–(d). The complaint sought monetary damages, and an injunction prohibiting Appellees from further discrimination. Trial was held on August 28, 1991. At the conclusion of the trial, the court ruled from the bench in favor of Appellees. Judgment was filed on August 29, 1991. The government appeals this decision.

## II. DISCUSSION

■ The district court held that the occupancy standard at issue, which limited occupancy of one-bedroom apartments to one person, did not violate the Fair Housing Act because the requirement was facially neutral. In doing so, the district court applied an incorrect analysis. HUD has adopted the three-part test set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) for evaluating claims of discrimination under the Fair Housing Act. *See, HUD v. Blackwell,* 908 F.2d 864 (11th Cir. 1990); *Pinchback v. Armistead Homes Corp.,* 689 F.Supp. 541 (D.Md.1988), *aff'd in part, vacated in part,* 907 F.2d 1447 (4th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 515, 112 L.Ed.2d 527 (1990). The *McDonnell Douglas* test recognizes that direct proof of unlawful discrimination is rarely available. Therefore, after a plaintiff makes a prima facie case, a presumption of illegality arises and respondent has the burden of articulating a legitimate, non-discriminatory justification for the challenged policy. This scheme is routinely used in housing and employment discrimination cases. The test is:

> First, the plaintiff has the burden of proving a prima facie case of discrimination by a preponderance of the evidence. Second, if the plaintiff sufficiently establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate undiscriminatory [sic] reason for its action. Third, if the defendant satisfies this burden, the plaintiff has the opportunity to prove by a preponderance that the legitimate reasons asserted by the defendant are in fact mere pretext.

*Pollitt v. Bramel,* 669 F.Supp. 172, 175 (S.D.Ohio 1987), (citations omitted). The district court failed to apply the *McDonnell Douglas* standard, and therefore erred as a matter of law.

The elements of a prima facie case of discrimination will vary from case to case, depending on the allegations and the cir-

---

**2.** 42 U.S.C. § 3612(o)(1) provides:
If an election is made under subsection (a), the Secretary shall authorize and ... the Attorney General shall commence and maintain, a civil action on behalf of the aggrieved person in a United States district court seeking relief under this subsection.

cumstances. HUD has a rule of thumb that an occupancy policy of two persons per bedroom is presumptively reasonable. *Memorandum for Regional Counsel: Fair Housing Enforcement Policy*, Intervenor's Brief, Appendix B at 2 (hereinafter "HUD Memorandum"); *but see, United States v. Lepore*, No. 1:CV–90–1956, slip op., 1991 WL 330890 (M.D.Pa. Dec. 23, 1991) (Appellant's Appendix at 35) (finding that a two-person occupancy restriction discriminated on the basis of familial status, and therefore violated the Fair Housing Act) (hereinafter *"Lepore"*). HUD's general rule does not mean that a single occupancy requirement is always invalid, but it does render such a requirement suspect; particularly when the single occupancy requirement is accompanied by other factors enumerated in the HUD Memorandum.

■ Some of the factors identified in the HUD Memorandum are applicable to Georgetown. Georgetown previously marketed itself as an "adults only" complex. In addition, Georgetown has "taken other steps to discourage families with children from living in its housing", HUD Memorandum at 4, through Brittain's representations of the disadvantages of living in the complex. The mere fact that the one person/one bedroom requirement was "applied to everybody, whether they be married [sic] or whether they be couples [sic] seeking to live together without benefit of marriage or whether they be a child [sic]," Transcript of Court's Findings, Addendum to Appellant's Brief at 3, is not sufficient to demonstrate compliance with the Fair Housing Act. If the result of this policy is a disparate impact on a protected class, facial neutrality will not save the restriction from violating the Act. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also, FEHC v. Merribrook Apartments*, FEHC Decision #89–19 (Calif. Fair Empl. & Hous. Comm'n, Nov. 11, 1988) (one person per bedroom restriction used to maintain a no children policy).

■ The district court stated: "if Congress really intended that you could not have a restriction on one bedroom apart-

ments, they would have said it." Transcript of Court's Findings, Addendum to Appellant's Brief at page 3. The issue in this case, however, is not whether Congress intended that there be *no* restrictions on one-bedroom apartments, but whether the particular restrictions at issue in this case violate the Act. The Act specifically provides that:

> [n]othing in this subchapter limits the applicability of any reasonable local, State, or Federal restriction regarding the maximum number of occupants permitted to occupy a dwelling.

42 U.S.C. § 3607(b)(1). The restrictions at issue in this case are not governmentally imposed, and are far in excess of restrictions imposed by the applicable municipal code. HUD, the agency charged with enforcing the statute, has stated:

> In this regard, it must be noted that, in connection with a complaint alleging discrimination on the basis of familial status, the Department will carefully examine any such *non-governmental* restriction to determine whether it operates unreasonably to limit or exclude families with children.

24 C.F.R. Chapter I, Subchapter A, Appendix I at 693 (1991) (emphasis added). Rather than authorizing *any* facially neutral occupancy standard, the Fair Housing Act requires that a court examine the totality of the circumstances to determine whether the facially neutral standard results in discrimination against a protected class. *Lepore*, slip op. at 12; *See also, Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977).

■ The district court placed significant emphasis on the fact that Brittain did not refuse to rent Mayeaux a two-bedroom apartment. There are three problems with this reliance. First, the issue is not whether any housing was made available to Mayeaux, but whether she was denied the housing she desired on impermissible grounds. *HUD v. Riverbend Club Apartments*, No. 04–89–0676–1 (Oct. 15, 1991), Intervenor's Brief, Appendix A at 9, n. 9. Second, there is a significant increase in cost between a

one-bedroom and a two-bedroom apartment. Third, Brittain volunteered discouraging information which makes it understandable that Mayeaux did not wish to view a two-bedroom apartment[3]. These representations qualify as "other steps [taken] to discourage families with children from living in its housing." HUD Memorandum at 4. A prima facie case of discrimination was clearly presented, and thus the burden shifts to Appellees to provide a non-discriminatory explanation for the restriction.

The only explanation offered by Appellees is the limited availability of parking. We find, as a matter of law, that no reasonable fact-finder could accept this proffered justification as anything other than a pretext. Mayeaux's five year old daughter could not possibly affect the availability of parking spaces. While parking may indeed be at a premium at Georgetown, the occupancy restriction is not a reasonable means of dealing with the problem. *See Lepore,* slip op. at 26–28. There is nothing in the restriction to prevent a resident of a one-bedroom apartment from having more than one car, and the restriction does not take into account the fact that infants will not require parking spaces. Appellees have never attempted any alternative method of allocating parking.

We therefore find that the occupancy restrictions imposed by Georgetown violate sections 3604(a)–(d) of the Fair Housing Act. Based on this conclusion, we remand this matter to the district court and direct that the district court enjoin Georgetown from discriminating on the basis of familial status, and that it determine the affirmative steps that may be necessary to notify the public that Georgetown will be operated in a manner that comports with the Fair Housing Act. On remand, the district court should also determine any other appropriate remedy to be awarded Mayeaux.

**3.** Furthermore, Appellees admitted that occupancy of the two-bedroom and three-bedroom apartments is restricted to two persons. As a result of this policy, no family which consisted of two parents and a child, or a single parent and two children could rent any apartment at

### III. CONCLUSION

For the reasons stated above, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

Georgetown. While there is no allegation that these policies were adopted in response to the 1989 amendments to the Fair Housing Act, these policies prevent the majority of families with children from living at Georgetown, and therefore violate the Act.