**FAIR HOUSING CONGRESS,**
**Tabon, et al., Plaintiffs,**

v.

**WEBER, et al., Defendants.**

**No. CV 96-8640-LGB(JGx).**

United States District Court,
C.D. California.

Dec. 4, 1997.

ORDER GRANTING PLAINTIFFS' MO-TION FOR SUMMARY JUDGMENT ON THE FIRST CAUSE OF ACTION AND GRANTING IN PART AND DE-NYING IN PART PLAINTIFFS' MO-TION FOR SUMMARY ADJUDICA-TION OF ISSUES

BAIRD, District Judge.

## I. INTRODUCTION AND PROCEDUR-AL BACKGROUND

Plaintiffs' motion for summary judgment and summary adjudication of issues came on regularly for hearing on December 1, 1997. Having carefully considered the papers submitted and oral argument of counsel, the Court hereby GRANTS summary judgment on the First Cause of Action in favor of plaintiffs, and GRANTS IN PART AND DE-NIES IN PART plaintiffs' motion for summary adjudication of issues.

This case arises out of the allegedly discriminatory treatment of families with children by the Vista De Anza Apartments in Torrance.

Plaintiffs Maureen Tabon and her minor son, Eric Tabon ("the Tabons") filed their original complaint against Chuck (Charles) Weber, 207 Anza Associates, Mary Russell, and Douglas Russell, individually and doing business as Vista De Anza Apartments (hereafter referred to collectively as "De Anza Apartments"), on December 12, 1996. The currently-operative First Amended Complaint ("1AC"), filed October 28, 1997, added the Fair Housing Congress of Southern California as a party plaintiff but is otherwise identical. The 1AC alleges five causes of action: (1) violation of 42 U.S.C. §§ 3604(a), (b), and (c)[1] and 3617 (Fair Housing Act); (2) violation of Cal.Gov.Code § 12955 (Fair Employment and Housing Act); (3) violation of Cal.Civ.Code § 51 et seq. (Unruh Civil Rights Acts); (4) violation of Cal.Bus. & Prof.Code § 17200 (unfair business practices); and (5) negligence.

On October 17, 1997, plaintiffs filed the instant Motion for Partial Summary Judgment/Summary Adjudication against all defendants other than Douglas Russell, solely on the first cause of action, specifically, defendants' violation of § 804(b) and (c) of the Fair Housing Act (42 U.S.C. § 3604(b) and (c)). Defendants' filed a timely Opposition on October 27, 1997. Plaintiffs' Reply, modifying the request to include summary adjudication of the first cause of action with respect to § 804(a), was filed November 3, 1997.

## II. Summary Judgment Standard

Summary judgment shall be granted if the evidence supporting the motion for summary judgment shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party moving for summary judgment may carry its initial burden by pointing out to the district court that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

To avoid summary judgment, the non-movant must set forth specific facts showing that there remains a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. The non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading." A factual dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Id.* at 255. If the nonmoving party's evidence is merely colorable or is not significantly probative, then summary judgment may be granted. *Id.* at 249–50.

District courts "possess the power to enter summary judgment *sua sponte*, so long as

---

1. 42 U.S.C. § 3604 corresponds to § 804 of the Fair Housing Act; § 3604(a), (b) and (c) corre-

spond to § 804(a), (b), and (c).

the losing party was on notice that she had to come forward with all of her evidence." *Celotex,* 477 U.S. at 326. Where one party moves for summary judgment and at the hearing the court determines there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law, *sua sponte* judgment in favor of the opposing party is appropriate so long as the losing party "had a full and fair opportunity to ventilate the issues involved in the motion." *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311–12 (9th Cir.1982).

## III. ANALYSIS

### A. Factual Background

The following facts are relevant and undisputed, except as noted:

The Vista De Anza apartment complex in Torrance consists of twenty-six two-story units, some of which have first-floor exterior entry doors and the rest of which have second-floor exterior entry doors. (Deposition of Mary Russell (hereafter "Russell Depo.") 73:1–14; Reagan Decl. ¶ 4.) During all times relevant to this action, defendants Mary Russell and Douglas Russell (collectively "the Russells") were employed as managers of the Vista de Anza Apartments. (Answer ¶ 8.) Defendant 207 Anza Associates owns the Vista de Anza Apartments. (Answer ¶ 6.) Defendant Charles Weber is the general and managing partner of 207 Anza Associates, and is the Russells' direct supervisor. (Answer ¶ 8; Russell Depo. 63:17–64:2.) The Russells' job duties as managers include showing apartments, enforcing apartment and pool rules, and issuing notices to terminate tenancies. (Russell Depo. 58:9–63:3.)

All tenants of the Vista de Anza Apartments sign a copy of the "Pool and Building Rules." (Russell Depo. 17:10–23.) These rules, based on rules provided by the Apartment and Motel Association of Torrance to which Mary Russell belongs, have been in effect for approximately 25 years, and remain in effect today. (Russell Depo. 16:12–19:20.) Several of these rules are relevant to the instant Motion, although plaintiffs seek summary judgment/summary adjudication only with regard to Rule 8. Rule 8 reads,

> Children will not be allowed to play or run around inside the building area at any time

because of disturbance to other tenants or damage to building property. Bikes, carriages, strollers, tricycles, wagons, etc. must be kept inside apartments or in garage area and not left outside.

(Brancart Decl., Ex. 4; Russell Depo. 15:22–17:9.) Other than the interior of a family's apartment unit, there is no place on the property of the Vista de Anza Apartments that children are allowed to play. (Russell Depo. 80:3–7.)

Rule 4 reads,

> All unnecessary noise, running, jumping, screaming, loud talking, or dangerous behavior will not be tolerated at any time in or around the pool or building areas.

(Brancart Decl., Ex. 4.)

Rule 7 reads,

> No toys, inner tubes, balls or any other objects whatsoever will be allowed in or around the pool area or inside the building area at any time.

(Brancart Decl., Ex. 4.) The "Pool and Building Rules" form also includes the following statement:

> all [tenant's] activities or those of his guests or occupants will be conducted in a quiet, dignified manner so as not to annoy or disturb other tenants or create a nuisance in any way.

(Brancart Decl., Ex. 4.)

Mary has testified that the purpose of the Rule 8 ban on children's play is "to keep children from getting hurt" and to maintain quiet for tenants who sleep during the day, although she conceded that it is noise, not play itself, which might disturb daytime sleepers. (Russell Depo. 30:19–34:22.) She has also testified that the portion of Rule 8 requiring tenants to keep bicycles, carriages and so on in garages or inside apartments is aimed at preventing people from tripping, as such equipment would block the building's narrow sidewalks. (Russell Depo. 28:5–18.)

Mary Russell prefers to rent apartments with second-floor entries to families without small children, and she had a rule that families with small children were not to live in any of the six second-floor entry units with balconies, although she has also testified that

she "would not deny renting to them." (Russell Depo. 65:8–24, 67:23–68:8.) She told prospective tenants with small children that they should rent an apartment with a first-floor entry, because the second-floor entry units were "dangerous." (Russell Depo. 70:3–6, 16–20.) Mary Russell has testified that this belief and practice are based on an incident "several years ago" in which a child was playing by hanging from the second floor balcony by a jump rope. (Russell Depo. 67:17–68:9.) Although an assistant manager (not a defendant in this action) rented a second-floor balcony apartment to a family with small children after the filing of this action, Mary Russell had not done so in "many, many years." (Russell Depo. 66:14–67:14.) No steps have been taken to make the balconies at Vista De Anza Apartments safer for small children. (Russell Depo. 72:11–15.)

Maureen Tabon entered into a rental agreement for the rental of apartment number 15 at the Vista de Anza Apartments on August 1, 1991, and the Tabons continually occupied apartment 15 from August, 1991 until December, 1995, when they vacated their apartment after being served with a notice threatening eviction. (Answer ¶ 15.) The notice was signed by Douglas Russell on his own behalf and on behalf of Charles Weber. (Answer ¶ 18; Ex. 5 to Brancart Decl.) During the Tabons' tenancy at Vista De Anza, plaintiff Eric Tabon was admonished by the Russells not to splash in the swimming pool, not to bounce the basketball, and not to ride his bicycle. (Answer ¶ 16.) Another tenant was evicted from Vista De Anza because her boyfriend (not a tenant) yelled at Mary Russell and caused disturbances in the building, and because her son was wrestling in the pool, bouncing a ball, wrestling in his apartment at 9:30 p.m., riding his bike, and skateboarding. (Answer ¶ 16; Russell Depo. 48:20–49:18.)

**B. Discussion**

Plaintiffs seek summary adjudication that Rule 8 of the "Pool and Building Rules" of Vista De Anza Apartments, and the "steering" of families with small children to first-floor entry apartments only, violate subsections § 804(a), (b), and (c) of the Fair Housing Act. For purposes of the following analysis, the two sentences comprising Rule 8 will be treated separately. The first sentence of Rule 8 mentions children explicitly. This sentence reads, "Children will not be allowed to play or run around inside the building area at any time because of disturbance to other tenants or damage to building property." The second sentence reads, "Bikes, carriages, strollers, tricycles, wagons, etc. must be kept inside apartments or in garage area and not left outside." (Brancart Decl., Ex. 4; Russell Depo. 15:22–17:9.)

**1. Rule 8 and § 804(c) of the Fair Housing Act**

The Fair Housing Act, 42 U.S.C. §§ 3604, prohibits discrimination on the basis of familial status, including discrimination against families with children.

Under § 804(c), it is unlawful to "make, print, or publish, or cause to be made, printed or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on ... familial status, ... or an intention to make any such preference, limitation, or discrimination." Under HUD regulations, which are entitled to considerable judicial deference, this subsection applies to both written and oral statements. 24 C.F.R. 100.75(b); *see also Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 210, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 107, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979).

The standard for determining whether a given statement violates § 804(c) is whether the statement suggests a preference to the ordinary reader or listener. *U.S. v. Hunter*, 459 F.2d 205, 215 (4th Cir.), *cert. denied*, 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972), *Ragin v. New York Times Co.*, 923 F.2d 995, 999–1000 (2d Cir.), *cert. denied*, 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991). No discriminatory intent is required. *Jancik v. HUD*, 44 F.3d 553, 556 (7th Cir.1995).

The first sentence of Rule 8, quoted in its entirety above at III.B, is a facially discriminatory restriction on the use of apartment

facilities by tenant children, which in turn discriminates against tenants with children on the basis of their familial status (a group of persons living together without children are not subject to the first sentence of Rule 8). It is not disputed that Rule 8 was promulgated and enforced by defendants. (See, e.g., Answer ¶ 16.) On this basis, plaintiffs seek summary adjudication that Rule 8 violates § 804(c).

Plaintiffs cite *Blomgren v. Ogle*, 850 F.Supp. 1427 (E.D.Wash.1993) in support of their motion. In *Blomgren*, the Washington district court held that a written apartment rule stating "no children (other than visiting) or pets allowed in the apartments" violated § 804(c) as a matter of law, although the plaintiff tenant testified that she had never seen the rule, and defendants testified the rule was never enforced. The *Blomgren* court granted summary adjudication in favor of the plaintiff on the § 804(c) issue, holding that "a violation occurs . . . when the communication implies an obvious discriminatory preference. Alternatively, intent to discriminate also need not be proved to establish violation where the ordinary reasonable reader infers the particular discriminatory preference." *Blomgren*, 850 F.Supp. at 1440.

Defendants seek to distinguish this case from *Blomgren* because neither sentence of Rule 8 is an outright ban on children. However, the *Blomgren* court made clear that "discriminatory preference," not an outright ban, is the basis for an § 804(c) violation. Defendants also argue that *Blomgren* supports the lawfulness of Rule 8, insofar as rules restricting children's play and requiring that bicycles and other wheeled items be kept out of halls, also present in the *Blomgren* lease, were not held to violate § 804(c). At most, however, this would save only the second sentence of Rule 8. Moreover, the Court did not explicitly discuss those rules in the § 804(c) context. *Blomgren*, 850 F.Supp. at 1439–1440. The plaintiff in *Blomgren* had alleged that defendant's refusal to renew her lease constituted a violation of § 804(a). Defendants raised plaintiff's son's violation of other apartment rules, including a general rule (not specifically mentioning children)

very much like that in Vista De Anza's "Pool and Building Rules," as a legitimate nondiscriminatory reason for refusing to renew the plaintiff's lease. The *Blomgren* court denied summary judgment to the plaintiff on the § 804(a) claim because material issues remained in dispute as to whether defendants refused to renew plaintiff's lease because "her child's behavior was unreasonably disruptive to the tenants and property." The court did not address whether the other rules mentioning children violated § 804(c). *Blomgren*, 850 F.Supp. at 1438.

Plaintiffs also cite *HUD v. Paradise Gardens*, Fair Housing—Fair Lending ¶ 25,037 at 25,391 (HUD ALJ 1992), an HUD administrative law decision finding that community rules which facially discriminated against families with children in access to community facilities violate § 804(c). In *Paradise Gardens*, restrictions were placed on children's use of the swimming pool which did not apply to other residents.

█ While Rule 8 is not an outright ban on children as tenants, the rationale of *Blomgren* and *Paradise Gardens* applies to its first sentence. The first sentence of Rule 8 is clearly a "limitation" on the use by children tenants of the apartment facilities, and an ordinary reader of the first sentence of Rule 8 could not reasonably interpret it otherwise.[2] The first sentence of Rule 8 restricts children's play activities as such, even when those activities do not violate Rule 4 (banning loud and/or dangerous behavior) or "annoy or disturb other tenants or create a nuisance in any way." Defendants have presented no admissible evidence of any nondiscriminatory alternative interpretation, other than Ms. Tabon's subjective impression of the rule as vague and open to interpretation. Nor have defendants provided statutory or caselaw authority for their contention (Def.'s Opp., p. 7) that so long as plaintiffs were not actually discouraged from renting the apartment, there was no violation of § 804(c). Therefore, under *Ragin, Jancik, Blomgren,* and *Paradise Gardens,* supra, summary adjudication is GRANTED in favor of plaintiffs

---

**2.** Thus defendants' evidence that Ms. Tabon found the rule "vague" or open to interpretation, and did not herself know whether the rule was discriminatory (a legal conclusion) is irrelevant. (Tabon Depo. 117: 11–16, 139:11–14.)

that the first sentence of Rule 8 violates § 804(c).

■ However, the second sentence of Rule 8 is not facially discriminatory, and plaintiffs have not demonstrated that the second sentence of Rule 8 "indicates any preference, limitation, or discrimination based on ... familial status," as prohibited by § 804(c), especially given Rule 7, which prohibits all tenants from leaving any objects inside the pool or building area at any time. (Brancart Decl., Ex. 4.) An ordinary reader would not infer an anti-children preference from a requirement that all tenants keep the sidewalks and building areas clear. Therefore, summary adjudication in favor of plaintiffs that the second sentence of Rule 8 violates § 804(c) is DENIED. As plaintiffs and moving parties "had a full and fair opportunity to ventilate the issues involved in the motion," as required under *Cool Fuel,* supra, this Court *sua sponte* GRANTS summary adjudication in favor of defendants that the second sentence of Rule 8 does not violate § 804(c).

## 2. Rule 8 and § 804(b)

■ 42 U.S.C. § 3604(b) (or § 804(b)) provides, in relevant part, that it is illegal to discriminate in the "terms, conditions, and privileges of a rental dwelling because of familial status." Limiting the use of privileges and facilities associated with a dwelling because of familial status is a violation of § 804(b). 24 C.F.R. § 100.65(b)(4). Plaintiff has made out a *prima facie* case of discrimination by showing facially discriminatory rules which treat children, and thus, families with children, differently and less favorably than adults-only households. *United States v. Badgett,* 976 F.2d 1176 (8th Cir.1992). Once a *prima facie* case is established, defendants must articulate a legitimate justification for their rules. *Badgett,* 976 F.2d at 1178. In making that showing, defendants must establish that their rules constitute a compelling business necessity and that they have used the least restrictive means to achieve that end. *Fair Housing Council v. Ayres,* 855 F.Supp. 315, 318–19 (C.D.Cal. 1994); *U.S. v. M. Westland Co.,* CV 93–4141, Fair Housing–Fair Lending ¶ 15,941 (HUD ALJ 1994).

In *Westland,* Judge Tashima held that outright prohibitions on children's use of facilities like a billiards room and shuffleboard facility were not justified, and that rules requiring adult supervision of all children (up to age 18) at all times were not justified. A prohibition on unsupervised swimming which would prevent "even a 17–year old certified lifeguard from swimming unaccompanied is overly restrictive." ¶ 15,941.3. By contrast, rules requiring adult supervision of very young children during specified activities (swimming, riding bikes) were held to be justified. *Westland,* supra, at ¶ 15,941.2–4. Partial summary judgment was granted in favor of plaintiffs that the unjustified rules violated § 804(b) and (c).

■ The first sentence of Rule 8 is facially discriminatory, and thus, under *Badgett, Ayres,* and *Westland,* supra, the burden shifts to defendants to demonstrate a legitimate justification for the rule. Defendants have offered two reasons for the rule: children's safety and maintaining quiet. Even assuming that these are compelling business reasons, Rule 8 is not the least restrictive means for accomplishing either of these ends. Indeed, Rule 8 is superfluous for accomplishing these ends, as Rule 4 already protects safety and quiet by providing that "All unnecessary noise, running, jumping, screaming, loud talking, or dangerous behavior will not be tolerated at any time in or around the pool or building areas." Furthermore, defendant Mary Russell conceded that it is not play as such, but loud activity which is disturbing to other tenants. (Russell Depo. 30:19–34:22.) The ban on all children's play, even a quiet, safe game of checkers, is like the ban on unsupervised swimming which would include a 17–year–old lifeguard. Under *Westland,* supra, the first sentence of Rule 8 is overly restrictive and violates § 804(b). Summary adjudication in favor of plaintiffs is therefore GRANTED that the first sentence of Rule 8 violates § 804(b).

The second sentence of Rule 8 reads, "Bikes, carriages, strollers, tricycles, wagons, etc. must be kept inside apartments or in garage area and not left outside." This sentence of the rule is not facially discriminatory. Moreover, defendants have presented admissible evidence that the purpose of these rules is to prevent Vista De Anza's narrow

sidewalks from being dangerously blocked. (Russell Depo. 28:5–18.) Although the Rules explicitly mention children's toys and equipment used by children (strollers, tricycles, wagons), the Rules cover equipment also used by adults (bikes, balls); for example, Rule 7 reads, "No toys, inner tubes, balls or any other objects whatsoever will be allowed in or around the pool area or inside the building area at any time." Plaintiffs have not demonstrated any less restrictive means for keeping the sidewalks clear. Therefore, defendants have raised a genuine issue of material fact as to the legitimate business and safety purpose of the second sentence of Rule 8, and summary adjudication in favor of plaintiffs that the second sentence of Rule 8 violates § 804(b) is DENIED. As plaintiffs and moving parties "had a full and fair opportunity to ventilate the issues involved in the motion," as required under *Cool Fuel,* supra, this Court DENIES plaintiffs' motion for summary adjudication as to the second sentence of Rule 8 and GRANTS *sua sponte* summary adjudication in favor of defendants that the second sentence of Rule 8 does not violate § 804(b).

### 3. "Steering" in Violation of § 804(a) and (c)

In their Motion, Fair Housing Congress and the Tabons seek summary adjudication that Mary Russell's "steering" of families with small children away from second-floor entry apartments also violates § 804(b) and § 804(c). The Reply recharacterizes the steering as a violation of § 804(a) (rather than § 804(b)) and § 804(c). While § 804(b) makes it unlawful to "assign any person to a particular floor of a building, because of . . . familial status," 24 C.F.R. § 100.70(c)(4), § 804(a) prohibits "refus[ing] to negotiate for the sale or rental of, or otherwise mak[ing] unavailable or deny[ing], a dwelling to any person because of . . . familial status."[3]

An example of "mak[ing] unavailable" in violation of § 804(a) is "steering." "Steering" is "not an outright refusal to rent to a person within a class of people protected by the statute; rather it consists of efforts to

deprive a protected homeseeker of housing opportunities in certain locations." *HUD v. Edelstein,* Fair Housing–Fair Lending ¶ 25,018, p. 25,236 and 25,239 (1991). "A landlord cannot justify steering families with children away from housing by groundlessly claiming that the housing would be unsafe for resident children. As a general rule, safety judgments are for informed parents to make, not landlords." *Edelstein,* supra, at 25, 239.

Statements "discourag[ing] the rental of a dwelling because of . . . familial status, by exaggerating drawbacks . . . of a dwelling" are also violations of § 804(c). 24 C.F.R. § 100.70(c)(2); *see also U.S. v. Grishman,* 818 F.Supp. 21 (D.Me.1993) (landlord's oral statement to rental agent that property was "less suitable" for families with children is a statement indicating a preference based on familial status in violation of § 804(c).) No discriminatory intent is required under *Jancik,* supra, 44 F.3d at 556. The test is whether the ordinary listener would understand that a preference is being communicated. *U.S. v. Hunter* and *Ragin,* supra.

The testimony of Vista de Anza manager Mary Russell makes it clear that she enforced an informal policy of not renting second-floor entry balcony apartments to families with small children, and that she communicated this preference to prospective tenants. A statement made to an ordinary prospective renter by the manager of the apartment complex that families with small children "should" rent only first-floor entry apartments communicates such a preference. Furthermore, no second-floor entry apartments had been rented to families with small children in "many, many years," according to Mary Russell. Even if her preference is based on legitimate safety concerns, this does not cure the violation of § 804(a) and (c); such judgments are to be left to parents, not landlords, especially when the landlord has failed to employ a less restrictive means of protecting health and safety, for example by modifying the balcony in some way.

---

**3.** Although in their Reply plaintiffs request summary adjudication in their favor under § 804(a) rather than § 804(b), defendants are not prejudiced by the change, as the regulations concern-

ing "steering" upon which plaintiffs rely are drawn from a section governing both 42 U.S.C. 3604(a) and (b), 24 C.F.R. § 100.70.

In *Edelstein,* supra, the landlord was not justified in banning all children under age five from a housing complex on the basis of an alleged automobile accident ten years before. Similarly, in this case Mary Russell bases her "preference" that families with small children not live in second-floor entry balcony apartments on an incident "several years ago" in which a child was playing by hanging from the second floor balcony by a jump rope. While the landlord in *Edelstein* banned children under five from the complex entirely, Mary Russell's conduct nevertheless "deprive[s] a protected homeseeker of housing opportunities in certain locations," namely, balcony apartments at Vista De Anza, and constitutes "steering families with children away from housing," in violation of § 804(a) and *Edelstein,* supra, at p. 25,236 and 25,239. It is thus irrelevant whether, as defendants argue, the steering at issue in this case results in "segregated housing patterns" under 24 C.F.R. 100.70(a).

Defendants make several arguments in response to plaintiff's motion with respect to the issue of steering. First, defendants argue that plaintiffs do not allege "steering" in their pleadings. While the word "steering" does not appear in the 1AC, the 1AC does allege that defendants engaged in "a pattern or practice of discrimination against families with children" (1AC ¶10) in violation of §§ 804(a), (b), and (c) (1AC ¶33).

Second, defendants argue that the individual plaintiffs were not themselves steered. Plaintiffs concede that this is so; as a result, the Tabons lack standing as "aggrieved persons" who may file suit under 42 U.S.C. § 3613 to remedy housing discrimination. However, plaintiff Fair Housing Congress has standing in its own right to bring claims of discriminatory steering by defendants in the operation of rental premises. *Havens Realty Corporation v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

Third, defendants argue that HUD regulations do not have the force of law. *Housing Opportunities Made Equal v. Cincinnati Enquirer,* 731 F.Supp. 801, 803 (S.D.Ohio 1990); *Spann v. Colonial Village, Inc.,* 662 F.Supp. 541, 544–45 (D.D.C.1990). However, the cases upon which defendant relies involve HUD regulations concerning housing advertising, and in one case, a relatively trivial

aspect of that advertising, rather than actual rental policy. In *Cincinnati Enquirer,* the HUD regulation in question, 24 C.F.R. § 109.30(a), was merely a logo type size requirement with which the defendant had failed to comply. *Cincinnati Enquirer,* 731 F.Supp. at 802. In *Spann,* the HUD regulation concerned the use of models of different races in real estate advertising. *Spann,* 662 F.Supp. at 545. Defendant has cited no authority, and this Court is aware of none, suggesting that HUD regulations which explain or interpret substantive provisions of the Fair Housing Act are to be disregarded. HUD's regulations are entitled to great weight. *Trafficante* and *Gladstone,* supra. Defendants' authority is not to the contrary. Moreover, the violations alleged by plaintiffs rely on caselaw, not solely upon HUD regulations.

Therefore, summary adjudication on the first cause of action is DENIED with respect to plaintiffs Maureen and Eric Tabon and is GRANTED in favor of plaintiff Fair Housing Congress that Mary Russell's "steering" of families with small children to apartments other than those with second-floor entries constitutes a violation of § 804(a) and (c) of the Fair Housing Act.

**4. Liability of Defendants Charles Weber and 207 Anza Associates**

The direct evidence of discriminatory housing practices at Vista de Anza Apartments does not demonstrate the participation of defendants Charles Weber or 207 Anza Associates. However, the duty not to discriminate under the Fair Housing Act is nondelegable. *Phiffer v. Proud Parrot Motor Hotel, Inc.,* 648 F.2d 548, 552 (9th Cir. 1980). Moreover, a property owner is liable for the discriminatory acts of employees even if the property owner instructed his employees not to discriminate. *Walker v. Crigler,* 976 F.2d 900, 904–5 (4th Cir.1992). Therefore, summary adjudication of the issues as set out above is GRANTED on the first cause of action in favor of plaintiffs against defendants Mary Russell, Charles Weber, and 207 Anza Associates.

## V. CONCLUSION

Summary judgment is therefore GRANTED in favor of plaintiffs and against defendants Charles Weber, 207 Anza Associates, and Mary Russell as to the First Cause of Action, violation of § 804(a), (b), and (c) of the Fair Housing Act.

This Court also

(1) GRANTS summary adjudication in favor of all plaintiffs that the first sentence of Rule 8 violates § 804(c) and § 804(b);

(2) DENIES summary adjudication in favor of plaintiffs as to the second sentence of Rule 8, and GRANTS summary adjudication *sua sponte* in favor of defendants that the second sentence of Rule 8 does not violate § 804(c) and § 804(b); and

(3) GRANTS summary adjudication in favor of plaintiff Fair Housing Congress and DENIES summary adjudication in favor of the Tabons that Mary Russell's "steering" of families with small children to apartments other than those with second-floor entries constitutes a violation of § 804(a) and (c) of the Fair Housing Act.

**IT IS SO ORDERED.**