UNITED STATES of America, Plaintiff,

v.

PLAZA MOBILE ESTATES, a general partnership, Jack Olof; Edward Tailford; Jack Jordan; et al., Defendants.

Marilyn Johnson and Carl Johnson, Karen Eberhardt, Delphine Cruse, Ernest Moreno, Alfonso Moreno, et al., Plaintiff-intervenors,

v.

Plaza Mobile Estates; Vernon Davis; Jack Olof; Edward Tailford; Jack Jordan; Joseph Sherman; Bruce Robinson; Madge Robinson; et al., Defendants.

Nos. CV91–6255–RMT(GHKx), CV92–3015–RMT(GHKx).

United States District Court, C.D. California, Western Division.

July 1, 2003.

Fernando M. Olguin, Traber & Voorhees, Pasadena, CA, Debra W. Yang, Los Angeles, CA, for plaintiff.

Marilyn L. Bonetati, Bonetati & Associates, Terry Rex Dowdall, Dowdall Law Offices, Orange, CA, George Steven Andersen, James F. Keleher, Andersen &

Keleher, Manhattan Beach, CA, Michael Visalia, CA, for defendants.

## MEMORANDUM RE MOTION BY PLAINTIFF AND PLAINTIFF-INTERVENORS FOR PARTIAL SUMMARY JUDGMENT RE: PARK RULES

TAKASUGI, Senior District Judge.

This matter has come before the court on the motion by plaintiff-intervenors and plaintiff United States of America for partial summary judgment against defendants Joseph Sherman, Mike and Darla Morton, and George Briggs re: park rules. Having considered the pleadings and other papers filed herein, the court issues this memorandum in lieu of findings of fact and conclusions of law.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By this motion, plaintiff United States of America and plaintiff-intervenors seek (1) declaration that rules and regulations at Walnut Hills Mobile Home Community ("Walnut Hills"), Rancho La Seda Mobile Home Community ("Rancho La Seda"), Sierra Pines Mobile Home Country Club ("Sierra Pines"), Rancho La Puente Mobile Home Community ("Rancho La Puente"), Rancho Hermoso Mobile Home Park ("Rancho Hermoso"), and Park Santa Anita ("Santa Anita") have restricted or denied access to facilities and/or areas on the basis of age in violation of the Fair Housing Act, 42 U.S.C. §§ 3601, et seq.; and (2) injunctive relief, precluding any further publication or enforcement of the discriminatory rules at Walnut Hills, Rancho La Seda, and Sierra Pines (collectively, "Current Parks").

The Current Parks are mobile home parks presently owned by Defendant Joseph Sherman ("Sherman"). Rancho La Puente, Rancho Hermoso, and Park Santa Anita (collectively, "Previously Owned Parks") are mobile home parks previously owned by Defendant Sherman. The mobile home parks, Rancho La Puente and Rancho Hermoso were sold by Defendant Sherman in 1996 and 1995, respectively. Park Santa Anita was closed in 1994.

Defendant George Briggs ("Briggs") was the on-site manager of Park Santa Anita from 1989 to 1994. Beginning in 1994, per the request of Defendant Sherman, Defendant Briggs served as supervisor to the on-site managers of Rancho Hermoso, Rancho La Puente, and Rancho La Sedo. Shortly thereafter, Defendant Briggs additionally served as supervisor to the on-site managers of Sierra Pines and Walnut Hills. From February 1992, to April 1995, defendants Mike and Darla Morton (collectively, the "Mortons") managed Walnut Hills.

## AGE RESTRICTIVE RULES AT THE MOBILE HOME PARKS

Of the six mobile home parks in question herein, Walnut Hills, Sierra Pines, and Rancho Hermoso had, in 1989, preambles to their rules stating that the park was "designed and built as an adult facility." In 1993, Rancho La Seda's preamble to its rules stated that it was "designed as an ADULT facility."

As of March 10, 1989, mobile home park rules at Sierra Pines, restricting access or denying the use of park facilities and/or areas on the basis of age, included the following: (a) Children under the age of fourteen(14) years old shall not be allowed to ride a bicycle on the park streets

without the accompaniment of an adult registered to the mobile home in which they reside, (b) Children under the age of eight (8) years old must be confined to a play area in the rear fenced yard of the family residence; (c) Children shall not be allowed to play on park streets, or in any other common areas; (d) Residents under the age of eighteen (18) years old shall not be permitted to use the recreation building (clubhouse) or any other recreational facilities without the accompaniment of an adult registered to the mobile home in which they reside; (e) Residents under the age of eighteen (18) years old must be accompanied by the registered resident adult from the same household in order to use any of the recreational facilities or recreational building (clubhouse); (f) Residents and visitors under the age of eighteen (18) years old may use the swimming pool and sun deck during the hours of 10:00 a.m. to 12:00 p.m. (noon) every day. Residents and visitors under the age of eighteen (18) years old are not permitted around the pool or sun deck after 12:00 noon; (g) Residents and visitors under the age of eighteen (18) years old are not permitted to use the saunas or the therapeutic jet pool at any time; and (h) Children under the age of fourteen (14) years old must be accompanied by a registered resident adult to be allowed to ride a bicycle in the park streets.[1]

From March, 1995, to the present date, rules at Sierra Pines, restricting access or denying the use of park facilities and/or areas on the basis of age, include the following: (a) The adult resident host *must* accompany all guests of their mobile home who use the recreation building (clubhouse) or any of the recreational facilities

of the park; (b) Children under the age of fourteen (14) years old must be accompanied by the registered resident adult from the same household in order to use any of the recreational facilities or recreational building (clubhouse), and (c) Residents and visitors under the age of fourteen (14) years old are not permitted to use the saunas or the therapeutic jet pool (spa) at any time. As of March, 1995, supplemental park rules and regulations regarding the recreation building policies of Sierra Pines mandated that, when using the clubhouse, persons under ten (10) years old must be accompanied by an adult resident. In 1997, Sierra Pines had rules posted that provided: (a) Use of the billiards room was restricted to residents over eighteen (18) years old; (b) Use of the spa was prohibited to children under eighteen (18) years old; and (c) Use of the pool by children fourteen (14) years old and under required accompaniment by a resident.

As of July, 1989, rules at Walnut Hills restricting access or denying the use of park facilities and/or areas on the basis of age included the following: (a) Bicycle riding by anyone is prohibited unless accompanied by adult resident parent or adult host; (b) Any guest walking or riding bicycles must be accompanied by an adult resident; (c) Residents under the age of eighteen (18) years old shall not be permitted to use the recreation facility without the accompaniment of an adult registered to the mobile home in which they reside, except no one under twenty-one (21) years old may use the billiard room at any time; (d) Parent of resident child or resident host must accompany children at all times in the pool or pool area; (e) Guests and residents under the age of eighteen (18)

---

**1.** Defendants object to the declaration of Bert Voorhees on the grounds that it lacks foundation, is not based upon personal knowledge, is speculative and contains inadmissible hearsay. However, Voorhees' declaration is based on depositions referenced in the declaration and information obtained from defendants through the discovery process. As such, the declaration is based on personal knowledge and does not lack foundation. Moreover, the depositions and discovery production contain statements by a party opponent.

years old are permitted to use the swimming pool and sun deck from the hours of 9.00 a.m. to 12 noon only and must be accompanied by the parent or resident child or resident host; and (f) Any coach where children reside must be fenced.

From December, 1992, to the present date, rules at Walnut Hills, restricting access or denying the use of park facilities and/or areas on the basis of age, include the following: (a) Persons under fourteen (14) years old must be accompanied by a registered adult resident to be in the clubhouse; (b) No one under the age of eighteen (18) years old is permitted in the billiard room at any time; (c) Persons under fourteen (14) years old must be accompanied by a registered adult resident to use recreational facilities; (d) No one under the age of fourteen (14) years old is allowed to use the Jacuzzi; and (e) Bicycle riding by anyone under fourteen (14) years old and guest children under eighteen (18) years old must be accompanied by a responsible adult. Posted rules at Walnut Hills further provide that persons under fourteen (14) years old must be supervised by a registered adult to use the tennis courts.

As of February, 1990, rules at Rancho La Seda restricting access or denying the use of park facilities and/or areas on the basis of age included the following: (a) Adult park, residents must accompany all guest[s] using the swimming pool or sun deck unless Park management permission is previously obtained; (b) Guests and residents under the age of eighteen (18) years old are permitted to use the swimming pool and sun deck from the hours of 10:00 a.m. to 2:00 p.m. only and must be accompanied by an adult park resident; (c) At 2:00 p.m. children are to be out of the pool area; (d) Children are not to walk around the Park without adult supervision; and (e) Bicycle riding by anyone under the age of eighteen (18) yeas old is prohibited.

As of August, 1993, rules at Rancho La Sedo restricting access or denying the use of park facilities and/or areas on the basis of age included the following: (a) Residents under the age of fourteen (14) years old, shall not be permitted to use the recreation facilities without the accompaniment of an adult resident; (b) Parent or responsible adult must accompany all children under fourteen (14) years old at all times [in the swimming pool and/or pool area]; and (c) Bicycle riding by anyone under fourteen (14) years old and visitor children under the age of fourteen (14) years old, must be accompanied by a responsible adult.

From July, 1997, to the present date, rules at Rancho La Seda restricting access or denying the use of park facilities and/or areas on the basis of age, include the following: (a) Persons under fourteen (14) years old must be accompanied by a registered adult resident to be in the clubhouses; (b) No one under the age of eighteen (18) years old is permitted in the billiard room at any time; and (c) Bicycle riding by anyone under fourteen (14) years old and guest children under eighteen (18) years old must be accompanied by a responsible adult.

From March, 1989, to at least May, 1995, rules at Rancho Hermoso, restricting access or denying the use of park facilities and/or areas on the basis of age, included the following: (a) Children under 18 years old must be accompanied by a parent when they are in the swimming pool; (b) Minors under 16 years old are not permitted in the therapeutic pool; (c) For safety, children are not to ride bicycles, roller skates, skateboards, play in the street, play in RV storage, car wash, or wander around the park; (d) Children under 8 years old shall be confined to a play area in the rear fenced yard of the family residence; and (e) Residents under 18 years old shall not be permitted to use the recreation hall or

any other recreation facility without the accompaniment of an adult registered to the mobile home in which they reside.

From September, 1990, to at least June, 1991, rules at Rancho La Puente restricting access or denying the use of park facilities and/or areas on the basis of age, included the following: (a) Guests and residents under the age of eighteen (18) years old are permitted to use the swimming pool and sun deck from the hours of 10:00 a.m. to 2:00 p.m. only and must be accompanied by an adult Park resident; (b) At 2:00 p.m. children are to be out of the pool area; and (c) Children are not to walk around the park without adult supervision.

From 1989, to at least 1994, rules at Santa Anita, restricting access or denying the use of park facilities and/or areas on the basis of age, included the following: (a) All children must be accompanied by an adult to use the pool; (b) Children must be supervised by an adult when using park streets; and (c) Children must be supervised by their parents in the laundry room area.

## FAIR HOUSING ACT

 In 1968, Congress promulgated the Fair Housing Act, 42 U.S.C. §§ 3601, et seq., ("FHA") to prohibit discrimination on the basis of race, color, religion, or national origin. In 1988, Congress enacted the Fair Housing Amendments Act ("FHAA") amending the FHA to proscribe "familial status" discrimination. "Familial status" is defined as "one or more individuals (who have not attained the age of 18 years) being domiciled with ... a parent or another person having legal custody of such individual or individuals." 42 U.S.C. § 3602(k)(1). Specifically, under the FHA it is unlawful:

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavail-

able or deny, a dwelling to any person because of ... familial status ....

(b) To discriminate against any persons in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of ... familial status ....

(c) To make, print, or publish, or cause to be made, printed or published by any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on ... familial status ... or on intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604; *see also* 24 C.F.R. § 100.65. Moreover, section 3617 of the FHA provides that, "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by ... section 3604." 42 U.S.C. § 3617.

An example of "mak[ing] unavailable" in violation of § 804(a) is "steering." "Steering" is "not an outright refusal to rent to a person within a class of people protected by the statute; rather it consists of efforts to deprive a protected homeseeker of housing opportunities in certain locations." *HUD v. Edelstein,* Fair Housing–Fair Lending ¶ 25,018, p. 25,236 and 25,239 (1991). "A landlord cannot justify steering families with children away from housing by groundlessly claiming that the housing would be unsafe for resident children. As a general rule, safety judgments are for informed parents to make, not landlords." *Edelstein,* supra, at 25,239.

*Fair Housing Congress v. Weber,* 993 F.Supp. 1286, 1293 (C.D.Cal.1997).

The standard for determining whether a given statement [or rule] violates § 804(c) [42 U.S.C. section 3604(c)] is whether the statement suggests a preference to the ordinary reader or listener. *U.S. v. Hunter,* 459 F.2d 205, 215 (4th Cir.) *cert. denied,* 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972), *Ragin v. New York Times Co.,* 923 F.2d 995, 999–1000 (2d Cir.) *cert. denied,* 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991). No discriminatory intent is required. *Jancik v. HUD,* 44 F.3d 553, 556 (7th Cir.1995).

*Weber,* 993 F.Supp. at 1290.

Limiting the use of privileges and facilities associated with a dwelling because of familial status is a violation of § 804(b) [42 U.S.C. section 3604(c)]. 24 C.F.R. § 100.65(b)(4). Plaintiff [makes] out a *prima facie* case of discrimination by showing facially discriminatory rules which treat children, and thus, families with children, differently and less favorably than adults-only households. *United States v. Badgett,* 976 F.2d 1176 (8th Cir.1992). Once a *prima facie* case is established, defendants must articulate a legitimate justification for their rules. *Badgett,* 976 F.2d at 1178. In making that showing, defendants must establish that their rules constitute a compelling business necessity and that they have used the least restrictive means to achieve that end. *Fair Housing Council v. Ayres,* 855 F.Supp. 315, 318–19 (C.D.Cal.1994); *U.S. v. M. Westland Co.,* CV 93–4141, Fair Housing–Fair Lending ¶ 15,941 (HUD ALJ 1994).

*Weber,* 993 F.Supp. at 1292.

### PRIMA FACIE CASE

■ It is clear from the age restrictive rules discussed above that the rules at issue here (the past rules from 1989 to the present at the Current Parks and the past rules from 1989 until the sale or closure of the Previously Owned Parks) are facially discriminatory. As was found in *Weber,* they "treat children, and thus, families with children, differently and less favorably than adults-only households." *Id.*

■ The preambles discussed above that described certain parks as "adult" parks are clear examples of illegal steering. Although they are not outright refusals to sell or rent to families with children, they indicate a preference for adults only and certainly discourage families with children from applying.

Thus, the issue becomes whether defendants have a legitimate justification for the discrimination rising to the level of a compelling business necessity as to which the least restrictive means to achieve such end has been used.[2] The business justifications articulated by defendants are (1) health and safety considerations and (2) a defense based on defendants' compliance with a conciliation agreement, which was approved by the United States Department of Housing and Urban Development ("HUD").

### HEALTH AND SAFETY CONSIDERATIONS

Considering the various age restrictive rules, they appear to fall into three categories: (1) absolute prohibitions, (2) adult supervision requirements, and (3) hours of access restrictions.

■ The absolute prohibitions include those rules that (1) prohibit all children under 18 (or 21) years old from using the

---

**2.** With respect to the illegal steering, defendants proffer no justification.

billiard room and from riding bicycles, (2) prohibit all children under 16 (or 18) years old from using the therapeutic pool, (3) prohibit all children under 14 (or 18) years old from using the sauna or jacuzzi, (4) require all children under 8 years old to be confined to rear fenced yard of family residence, and (5) prohibit all children[3] from playing on park streets and any other common areas. Although the health and safety of the children and other residents of the park are legitimate concerns, these absolute prohibitions are not the least restrictive means to achieve such ends. Certainly, prohibiting all "children" from playing in common areas while allowing "adults" to do so cannot be justified. Moreover, it is unclear how a 17–year-old's access to a billiard room is any more hazardous to his/her or anyone else's health or safety than a 22–year-old's access. Any concerns that defendants may have are not necessarily linked to age, and any concerns about problem behavior can be addressed with the use of rules. The same applies to the blanket prohibition of all 15–year–olds from using the therapeutic pool and all 13–year–olds from using the sauna or jacuzzi. Defendants' concerns do not appear to be age related and can be resolved with the use of rules. Moreover, the issue here is not whether a toddler or 5–year–old should be allowed unsupervised access to a jacuzzi. Even assuming arguendo that defendants' concerns were more logically linked to the age restrictions, requiring adult supervision rather than imposing an absolute ban is clearly a less restrictive means.

■ Adult supervision requirements include those rules that require adult supervision for (1) children under 18 years old using recreational facilities (recreation building and/or clubhouse), swimming pool, sun deck, saunas and laundry room; (2) children under 14 years old using recreational facilities, swimming pool and tennis courts, and riding bicycles; (3) children under 10 years old using recreational facilities; and (4) all children walking around the park. Certainly, prohibiting all children from walking around the park without adult supervision is overly broad regardless of the concern. As with the absolute prohibitions, these adult supervision requirements are also not the least restrictive means to achieve any health and safety objectives. First of all, there is nothing magical about the age of 18 or 14 years old if defendants' concerns are for the protection of the health and safety of the children or other residents in using recreational facilities or the swimming pool or riding bicycles. Such concerns could be addressed with the use of rules. Moreover, rather than being connected to such ages, bicycle and pool safety would be better served with a proficiency requirement.[4]

---

3. This blanket prohibition of all children without reference to a specific age is found in Sierra Pines' rules of March 10, 1989. All other references to children in Sierra Pines' rules as of March 10, 1989 specifies an age, such as "children under the age of EIGHT (8) years old," or "children under FOURTEEN (14)." When said rule mentions persons under the age of eighteen years old, they are referred to as "residents" under the age of 18. As such, this use of "children" without specification of an age is ambiguous Nevertheless, the most reasonable interpretation of the term, "children," when used without a speci-

fication as to age, is persons under the age of 18 years old.

4. Some of the parks have had rules requiring adult residents to accompany all guests using recreational facilities, swimming pool or sun deck, or walking or riding bicycles. If such rules are enforced as to all guests, regardless of age, there is no discrimination. However, if such rules are only enforced against guests under the age of 18 years old, they, as with the other adult supervision requirements, are not the least restrictive means to achieve any health and safety objective.

■ The hours of access restrictions include those rules that prohibit use of the swimming pool and sun deck to children under 18 years old except during certain hours (i.e., between 10:00 a.m. and 12:00 noon, 9:00 a.m. and 12:00 noon, or 10:00 a.m. and 2:00 p.m.). Defendants attempt to justify these swimming pool hour restrictions as "equitably accounting for the interests of tenants." Clearly this is not a compelling interest. Nor, can the interest or desire of the adult tenants to discriminate against children ever justify such discrimination.

## HUD–APPROVED CONCILIATION AGREEMENT

In October of 1989, Eric C. Mattauch filed a complaint with HUD claiming familial status discrimination by Walnut Hills. In September of 1990, Glenda Godfrey filed a similar complaint against Walnut Hills. With the intervention and approval of HUD, Mattauch and Godfrey entered into identical conciliation agreements ("Conciliation Agreement") with Sam Catalano, Walnut Hills manager, who signed on behalf of owner defendant Joseph Sherman. The conciliation agreement required the implementation of revised rules and regulations concerning age restrictions.[5]

■ In defense of their facially discriminatory rules, defendants contend that HUD's approval of the Conciliation Agreement requires the conclusion that the revised rules thereunder do not violate the FHAA. However, it is the court, not HUD, that is the final arbiter in determining whether the rules are in compliance with the FHA or the FHAA. Although the question of estoppel is not directly raised by defendants, this defense of using the Conciliation Agreement as a shield, is essentially seeking to estop plaintiff from being able to claim that the revised rules under the Conciliation Agreement discriminate based on familial status.

■ Estoppel is "an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). It provides a defense to one who has detrimentally relied on the conduct of another such that "it would be unjust to deprive him of that which he thus acquired." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 894(1) (1979)). However,

[w]hen the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant.

*Id.* at 60, 104 S.Ct. 2218. There is no "flat rule that estoppel may not in any circumstances run against the Government," given that there may be cases " in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some

---

**5.** The revised Rules and Regulations for Walnut Hills contained the following age restrictions: (1) Residents under the age of fourteen (14) years, shall not be permitted to use the recreation facilities without the accompaniment of an adult resident; (2) No one under the age of eighteen (18) is permitted in the billiard room at any time; (3) Recreation Facilities and Equipment ... Parent or responsible adult must accompany all children under fourteen (14) years of age at all times; (4) Playing on park lawns, guest parking, streets or riding of scooters, tricycles, roller skates, skate boards is strictly prohibited by anyone; (5) Bicycle riding by anyone under fourteen (14) years of age and guest children under eighteen (18) years of age must be accompanied by a responsible adult. The Rules and Regulations further restricted pool hours as posted on the pool gates.

minimum standard of decency, honor, and reliability in their dealings with their Government." *Id.* at 60–61, 104 S.Ct. 2218.

Here, defendants have no equitable estoppel claim against plaintiff-intervenors, as defendants have not relied on the conduct of plaintiff-intervenors to their detriment or in such a manner as to change their "position for the worse." See *Id.*, at 59, 104 S.Ct. 2218. The issue of estoppel arises solely as to plaintiff United States of America, as the conduct of its agent, HUD investigator, San Drake, served to trigger defendants' reliance on the Conciliation Agreement, and the mandatory rules and regulations implemented thereunder. However, even as against plaintiff, defendants have not suffered from a detrimental change in position. Any detriment defendants may have suffered derives from adopting the revised rules and regulations pursuant to the Conciliation Agreement. Although such rules may have been less discriminatory than the rules previously in place, defendants' reliance on the Conciliation Agreement has not resulted in defendants having relinquished any legal right or benefit or otherwise changing their position for the worse. Nor have defendants acquired anything as a result, the deprivation of which would be unjust. Defendants cannot claim that their reliance on the Conciliation Agreement gives them the right to continue to discriminate; the Conciliation Agreement cannot justify the perpetuation of discrimination. As such, the conciliation agreement provides no defense to the claims for declaratory or injunctive relief.

## CONCLUSION

Based on the foregoing, this court finds that (1) plaintiff United States of America and plaintiff-intervenors are entitled to summary judgment for declaratory and injunctive relief against defendants Joseph Sherman, Mike and Darla Morton, and George Briggs on the grounds that rules

and regulations at Walnut Hills, Rancho La Seda, and Sierra Pines, from 1989 to the present, have restricted or denied access to facilities and/or areas on the basis of age in violation of the FHA, and (2) plaintiff United States of America is entitled to summary judgment for declaratory relief against defendants Joseph Sherman, Mike and Darla Morton, and George Briggs on the grounds that rules and regulations at Rancho La Puente, Runcho Hermoso, and Park Santa Anita, from 1989 until the sale or closure of each park, restricted or denied access to facilities and/or areas on the basis of age in violation of the FHA.

This matter having come before the court on the motion by plaintiff-intervenors and plaintiff United States of America for partial summary judgment against defendants Joseph Sherman, Mike and Darla Morton, and George Briggs re: park rules, and the court having considered the pleadings and other papers filed herein, and having issued a memorandum in lieu of findings of fact and conclusions of law concurrently herewith,

IT IS ORDERED that the motion for partial summary judgment against defendants Joseph Sherman, Mike and Darla Morton, and George Briggs is granted as follows:

1. The age restrictive rules of Walnut Hills, Rancho La Seda, Sierra Pines, Rancho La Puente, Rancho Hermoso, and Santa Anita, specified in the concurrently filed memorandum, to wit: (1) preambles to the rules that have described certain parks as "adult" parks; (2) rules which have denied or limited access (including requiring adult supervision) with respect to use of recreational facilities (recreation building, clubhouse, billiard room, tennis courts), laundry room, swimming pool, therapeutic

pool, sauna, jacuzzi, and sun deck; (3) rules which have prohibited or restricted (including requiring adult supervision) bicycle riding, playing on park streets and other common areas, and walking around the park; and (4) rules which require confinement in fenced yards, have restricted or denied access to facilities and/or areas on the basis of age in violation of the Fair Housing Act. 42 U.S.C. §§ 3601, et seq.; and

2. Plaintiff and plaintiff-intervenors are entitled to injunctive relief against defendants Joseph Sherman, Mike and Darla Morton, and George Briggs prohibiting the enforcement of the said age restrictive rules at Walnut Hills, Rancho La Seda, and Sierra Pines.